IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NORTH CAROLINA

WESTERN DIVISION

Civil Case No.:

| | | |
|---|---|---|
| MARCIA ELENA QUINTEROS HAWKINS, ALICIA FRANKLIN, and VANESSA LACHOWSKI on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CLASS ACTION COMPLAINT |
| MANDY COHEN, in her official capacity as Secretary of the North Carolina Department of Health and Human Services, | ) ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

## I.      INTRODUCTION

1.      This class action challenges written policies and procedures and systemic practices of the North Carolina Department of Health and Human Services (DHHS) and its agents, the one hundred North Carolina county Departments of Social Services (DSSs), which are causing tens of thousands of low-income children, parents, and aged, blind and disabled adults to lose their Medicaid benefits without a determination they are no longer eligible for Medicaid. These procedures and practices also fail to reasonably accommodate persons with disabilities and create barriers for persons with limited English proficiency. In addition, these policies do not adhere to the prior notice and hearing rights required by due process. Plaintiffs have suffered terminations of health coverage or are threatened with terminations in the near future (or both) which violate

1

the federal Medicaid statute, the Americans with Disabilities Act, Section 1557 of the Affordable Care Act, and the due process clause of the Fourteenth Amendment of the U.S. Constitution.

2.      DHHS's challenged policies and practices continue to threaten Plaintiffs and the Plaintiff class with irreparable harm. Terminations of Medicaid coverage have placed the health of Plaintiffs and the plaintiff class at immediate risk. Without Medicaid coverage, Plaintiffs and other class members are unable to timely access necessary medical treatment or prescription drugs. In addition, thousands of current N.C. Medicaid beneficiaries (those receiving Medicaid benefits), including one of the named plaintiffs, are threatened with the loss of their health coverage in the near future as a result of these ongoing violations of federal law.

3.      Plaintiffs seek preliminary and permanent declaratory and injunctive relief against DHHS Secretary Mandy Cohen (Defendant), in her official capacity, to enjoin her and her agents from continuing these illegal written policies, procedures, and agency practices, and to comply with federal law. Plaintiffs also seek to enjoin the Defendant to reinstate Medicaid coverage to those for whom DHHS has illegally terminated coverage until Defendant has brought the agency's written policies, practices, and procedures into compliance with the Medicaid Act, the Americans with Disabilities Act, Section 1557 of the Affordable Care Act, and the Due Process Clause of the U.S. Constitution.

## II.     JURISDICTION AND VENUE

4.      Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, which provides for original jurisdiction over all civil suits involving questions of federal law, and 28 U.S.C. §§ 1343(3) and (4), which grant this Court original jurisdiction in all actions authorized by 42 U.S.C. § 1983 to redress the deprivation under color of State law of any rights, privileges, or immunities guaranteed by the U.S. Constitution and Acts of Congress.

2

5.     Plaintiffs seek declaratory, injunctive and other appropriate relief, pursuant to 28 U.S.C. §§ 2201 and 2202; Fed. R. Civ. P. 23, 57, and 65; 42 U.S.C. § 1983; and the Fourteenth Amendment to the U.S. Constitution.

6.     Venue for this action lies in this District pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred here and the Defendant may be found here.

## III.    PARTIES

7.     Plaintiff Marcia Elena Quinteros Hawkins is a 54-year-old U.S. citizen and resident of Mecklenburg County, North Carolina.

8.     Plaintiff is Alicia Franklin is a 43-year-old U.S. citizen and resident of Mecklenburg County, North Carolina.

9.     Plaintiff Vanessa Lachowski is a 38-year-old U.S. citizen and resident of Mecklenburg County, North Carolina.

10.     Defendant Mandy Cohen is the Secretary of the North Carolina Department of Health and Human Services.  She is charged with overall responsibility for the administration of DHHS, which administers the Medicaid program in North Carolina.  She is sued in her official capacity. DHHS is designated as the "single state agency" with direct responsibility for administration of the state Medicaid plan.   *See* 42 U.S.C. § 1396a(a)(5); N.C. Gen. Stat. § 108A-54.  DHHS is a public entity within the meaning of the Americans with Disabilities Act.

## IV.    CLASS ACTION ALLEGATIONS

11.     This suit is brought as a statewide class action pursuant to Fed. R. Civ. P. 23(a) and (b)(2) on behalf of all past, current, and future North Carolina Medicaid beneficiaries for whom Medicaid coverage was, is, or will be interrupted or terminated, effective January 1, 2014

or later, by Defendant, through her agents (a) without first making an individualized determination of ineligibility under all Medicaid eligibility categories; or (b) without first sending the beneficiary adequate and timely written notice of the termination of Medicaid and the right to a pre-termination hearing; or (c) as a result of failure to accommodate the beneficiary's disability; or (d) as a result of failure to communicate in the appropriate language to a beneficiary with limited English proficiency.

12.    The class is so numerous that joinder of all members is impracticable.

13.    There are questions of law and fact as to the permissibility of the Defendant's policies and practices with respect to terminating Medicaid coverage that are common to all members of the class, including whether Defendant and her agents have procedures and practices which terminate Medicaid benefits in violation of the federal Medicaid Act, the Americans with Disabilities Act, Section 1557 of the Affordable Care Act, and the Due Process Clause of the Fourteenth Amendment.

14.    The claims of the named Plaintiffs are typical of the claims of the class.

15.    The named Plaintiffs will fairly and adequately represent the interests of all members of the class. Specifically, their Medicaid coverage was terminated effective January 1, 2014 or later as a result of Defendant's illegal recertification practices, policies, and procedures and they are threatened with the loss of their Medicaid coverage in the future based on these policies and procedures, at serious risk to their health.

16.    Prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members which would establish incompatible standards of conduct for the party opposing the class or could as a practical

4

matter be dispositive of the interests of the other members or substantially impair or impede their ability to protect their interests.

17.     Defendant's actions and omissions have affected and will affect the class generally, thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole.

## V.  LEGAL FRAMEWORK

### A.  <u>Medicaid Requirements</u>

18.     The Medicaid Act, Title XIX of the Social Security Act, 42 U.S.C. § 1396-1396w-5, establishes a medical assistance program cooperatively funded by the federal and state governments.  Medicaid is designed to "enabl[e] each State, as far as practicable . . . to furnish (1) medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services, and (2) rehabilitation and other services to help such families and individuals attain or retain capability for independence and self-care. . ." 42 U.S.C. § 1396-1.  States are required to administer Medicaid "in the best interests of recipients."  *Id.* § 1396a(a)(19).

19.     The Centers for Medicare & Medicaid Services (CMS) of the United States Department of Health and Human Services is the agency that administers Medicaid at the federal level, including publishing rules and guidelines.  These rules and regulations are set forth in 42 C.F.R. §§ 430.0-483.480, and in the CMS *State Medicaid Manual*.  These rules and regulations are binding on all states that participate in Medicaid.

20.      A state's participation in Medicaid is voluntary.  Once a state elects to participate, it must adhere to the federal legal requirements, as provided by the United States Constitution, the

5

Medicaid Act, and the rules promulgated by CMS. 42 U.S.C. § 1396, et seq. North Carolina has elected to participate in the Medicaid program. N.C. Gen. Stat. § 108A-54.

21.     The state must adopt a plan that meets the requirements of the Medicaid Act. 42 U.S.C. § 1396-1; 42 C.F.R. § 430.12. States can make changes to their Medicaid programs by submitting state plan amendments for CMS's approval. 42 U.S.C. § 1396; 42 C.F.R. § 430.12.

22.     The Medicaid Act provides that the provisions of the state Medicaid plan become mandatory upon and must be in effect in all political subdivisions of the state. 42 U.S.C. § 1396a(a)(1); 42 C.F.R. § 431.50; *see* N.C. Gen. Stat. § 108-54.

23.     States participating in Medicaid are entitled to receive Federal Financial Participation (FFP) for Medicaid services provided to eligible beneficiaries, which means that the federal government matches all state Medicaid expenditures at a specified rate. 42 U.S.C. § 1396b(a). North Carolina receives a federal matching rate of approximately 67%.

24.     Under the federal Medicaid statute, states must provide Medicaid "with reasonable promptness to all eligible individuals." 42 U.S.C. § 1396a(a)(8). In addition, states must make Medicaid available to all qualifying individuals. 42 U.S.C. § 1396a(a)(10). The regulations implementing these statutory provisions require the agency to continue providing Medicaid until the beneficiary is determined to be ineligible under all Medicaid eligibility categories. 42 C.F.R. §§ 435.930(b); 431.916(f)(1).

25.     In addition, the state Medicaid agency must provide the "opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness." 42 U.S.C. § 1396a(a)(3). This includes the right to a written notice of the right to a pre-termination hearing provided at least ten days before Medicaid is terminated, including the specific reasons for the termination, the specific

6

regulation supporting the action, and an explanation of the right to a hearing. 42 C.F.R. §§ 431.210-212, 231, 435.917.

26.     The notice of Medicaid termination must inform the beneficiary that five days for mailing time will be added to the ten-day deadline to request continued benefits pending a hearing. 42 C.F.R. § 231(c)(2). Beneficiaries must be permitted to receive notices electronically. 42 C.F.R. § 435.918. If Medicaid is terminated for failure to provide information, the notice must inform the beneficiary that her case will be reopened if missing information is provided within 90 days. 42 C.F.R. § 435.916.

27.     Notices must be written in a manner that is understandable to Medicaid beneficiaries. 42 C.F.R. § 435.917.

28.     For most Medicaid beneficiaries, eligibility is required to be redetermined every twelve months, unless there is change in circumstance affecting eligibility before then. 42 C.F.R. § 435.916(a)(1), (b), (d).

29.     States must streamline and simplify the process for eligible persons to remain enrolled in Medicaid, including providing the option to reenroll in Medicaid through an internet website. 42 U.S.C. § 1396w-3.

30.     States are required to redetermine Medicaid eligibility "to the maximum extent practicable" based on electronic matching and other third party data, rather than by asking the applicant or recipient to prove their eligibility with paper documents. 42 U.S.C. § 18083; 42 C.F.R. §§ 435.916(a) and 952(c).

31.     The agency may not require Medicaid beneficiaries to provide information not needed to redetermine their eligibility. 42 C.F.R. § 435.907(e).

7

32. Information requests from the agency must be clear and understandable to beneficiaries. 42 C.F.R. § 435.905(b).

33. State agencies must provide assistance during the reenrollment process, in person, over the phone, and online, in a manner that is accessible to individuals with disabilities and those who are limited English proficient. 42 C.F.R. §§ 435.907, 908, 916.

34. Beneficiaries must be permitted to elect to receive electronically (by email or text) requests for information to complete their review. 42 C.F.R. § 435.918.

35. States must use prepopulated eligibility review forms. 42 C.F.R. § 435.916(a).

36. States must assure that each beneficiary with limited English proficiency receives notices (or at least a tagline on the notice) in their primary language and has access to a caseworker who speaks their language or to a qualified interpreter. 42 C.F.R. §§ 435.905, 908, and 916.

37. The agency must accept the applicant's statement as proof of eligibility when it is reasonably compatible with information the agency already has. 42 C.F.R § 435.952.

38. The agency must redetermine eligibility under "nonfiler" rules when the beneficiary cannot reasonably answer questions as to who will be a tax dependent for the current year. 42 C.F.R. § 435.603(f)(5).

39. The agency must redetermine eligibility under alternative rules in accordance with 42 C.F.R. § 435.603(i) for persons ineligible for Affordable Care Act subsidies.

**B. <u>Section 1557 of the Affordable Care Act (ACA)</u>**

40. Section 1557 of the Affordable Care Act (ACA) prohibits a state Medicaid program from discriminating on the basis of disability or national origin (including limited English proficiency) in its process for redetermining Medicaid eligibility. 42 U.S.C. § 18116; 45 C.F.R. § 92.3, et seq.

8

## C.  **The Americans with Disabilities Act (ADA)**

41.     Title II of the Americans with Disabilities Act (ADA) provides that "no qualified individual with a disability shall, by reason of disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity or be subjected to discrimination by such entity."  42 U.S.C. § 12132.

42.     Regulations implementing Title II of the ADA provide:

> A public entity may not, directly or through contractual or other arrangements, utilize criteria or other methods of administration: (i) that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability; [or] (ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the entity's program with respect to individuals with disabilities. . . .

28 C.F.R. § 35.130(b)(3).

43.     The ADA provides that:

> The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131 (2).

44.     "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."  28 C.F.R. § 35.130(b)(7).

## D.  **Due Process**

45.     Individuals have a right to a meaningful written notice of action and an opportunity for a hearing before being deprived of property.  This right stems from the Due Process Clause of the U.S. Constitution.  U.S. Const. 14th Amend., § 1.

9

46.     Recipients of public benefits have a property right to those benefits for which they have a "legitimate claim of entitlement" because they have the expectation of qualifying for it. *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972).

47.     Recipients of health insurance coverage under Medicaid are entitled to notice and an opportunity to contest an action with which they disagree before their benefits are terminated. *Goldberg v. Kelly*, 397 U.S. 254 (1970).

48.     These rights are guaranteed not only by the Constitution, but also the Medicaid Act. *See* 42 U.S.C. § 1396a(a)(3); 42 C.F.R. §§ 431.200-250.

49.     Due process protects against procedural rules that have the effect of denying access to a meaningful review or hearing process. *Logan v. Zimmerman Brush*, 455 U.S. 422 (1982). "A system or procedure that deprives persons of their claims in a random manner . . . necessarily presents an unjustifiable risk that meritorious claims will be terminated." *Id.* at 434-35.

## VI. FACTUAL ALLEGATIONS COMMON TO THE PLAINTIFF CLASS

### A. <u>Automatic Terminations Without Notice:</u>

50.     During 2014, DHHS required county DSSs to convert Medicaid cases to a new computer system called NCFAST.

51.     The conversion to NCFAST and other factors resulted in a significant number of cases in which the county DSSs have failed to timely complete the required annual redetermination of Medicaid eligibility.

52.     County DSSs also frequently fail to timely redetermine eligibility based on changes in circumstance occurring between annual reviews, such as a child turning age eighteen or nineteen.

10

53. With rare exceptions, a notice of Medicaid termination must be mailed at least ten days before the end of the month in order to be effective at the end of that month. 42 C.F.R. § 431.211.

54. Even after the county DSS completes its eligibility review, it takes one to three additional days before DHHS (through NCFAST) mails a notice of termination to the beneficiary.

55. It takes up to a week for approval of a new twelve-month period of Medicaid authorization in NCFAST to be communicated to Medicaid providers so that the Medicaid beneficiary can actually obtain services based on the renewal of eligibility.

56. Absent timely action by the county DSS, DHHS's eligibility computer system, NCFAST, is programmed to automatically terminate Medicaid eligibility at the end of the twelve-month authorization period regardless of whether the beneficiary is still eligible for Medicaid.

57. Absent timely action by the county DSS, NCFAST is programmed to automatically terminate Medicaid for a parent or other caretaker at the end of the month in which the youngest child turns age eighteen, regardless of whether the parent or caretaker continues to be eligible for Medicaid based on her disability, pregnancy, or age.

58. Absent timely action by the county DSS, NCFAST is programmed to automatically terminate Medicaid for a child who turns age nineteen, regardless of whether the child remains eligible for Medicaid under the category for children ages 19 and 20 or is disabled.

59. Absent timely county DSS action, each of these automatic terminations described in paragraphs 56-58 occurs without any written notice to the Medicaid beneficiary that his or her Medicaid coverage has stopped or of the right to appeal this action.

60.     As a result, tens of thousands of N.C. Medicaid beneficiaries who remained eligible for Medicaid have had their Medicaid eligibility terminated without timely and adequate notice or the right to a pre-termination hearing.

61.     An NCFAST report shows that, as of September 21, 2017, Mecklenburg County DSS had failed to complete eligibility reviews for 8,229 Medicaid cases that were due to be terminated automatically by NCFAST on September 30, 2017. In each of these cases, the notice of termination was required to be mailed no later than September 20, the day before the report was generated. 42 C.F.R. § 431.211. This means that in none of these 8,229 cases was timely notice of termination sent to the family.

62.     A second NCFAST report shows that, as of October 5, 2017, the County's review of 234 of these 8229 cases still had not been completed. This means that at least 234 Mecklenburg families lost Medicaid coverage with no notice at all on September 30, 2017.

63.     This problem is not limited to Mecklenburg County. As of September 21, 2017, 100 of 100 N.C. county DSSs had Medicaid cases scheduled for automatic termination by NCFAST on September 30, 2017 and no advance notice of termination had been sent to the family.

64.     In addition, NCFAST frequently places an automatic "hold" on the benefits of a Medicaid beneficiary which interrupts eligibility without informing either the county DSS or the beneficiary, causing Medicaid coverage to be suspended without notice for beneficiaries who remain eligible for Medicaid.

65.     As a result of these procedures and practices, Medicaid beneficiaries in North Carolina are threatened with improper termination or interruption of Medicaid coverage in the future.

**B.  <u>Failure to Consider All Medicaid Eligibility Categories Before Termination</u>**

66.     Where a Medicaid beneficiary alleging a disability preventing work loses her eligibility for Medicaid under a Medicaid category not requiring proof of disability, DHHS policy instructions prohibit determination of whether the individual is eligible for Medicaid based on her alleged disability before terminating her Medicaid benefits.

67.     This policy causes hundreds of class members each year to be terminated from Medicaid without consideration of their eligibility under all Medicaid categories.

68.     In addition, the notice of termination in these cases does not notify the person alleging disability that Medicaid eligibility based on disability was not considered, nor of the right to appeal and obtain a pre-termination hearing on whether she qualifies for Medicaid based on disability, nor of the right to reapply for Medicaid based on her disability.

69.     Due to multiple NCFAST programming errors in determining Medicaid eligibility and failure of NCFAST programming and DHHS forms to request necessary information, numerous other Medicaid beneficiaries are terminated at their annual review although they remain eligible for Medicaid. These deficiencies include but are not limited to failure to consider all bases for noncitizen eligibility, failure to determine eligibility under "nonfiler" rules where the recipient cannot reasonably answer who will be a tax dependent on their next tax return, and failure to redetermine eligibility in accordance with 42 CFR 435.603(i) for persons ineligible for subsidies under the Affordable Care Act.

### C. **Inadequate Termination Notices**:

70.     DHHS notices of Medicaid termination are not written in a manner that is understandable to beneficiaries, many of whom have cognitive impairments or limited literacy or have limited English proficiency.

13

71.    DHHS notices of Medicaid termination often do not include the specific reason for termination or the specific legal authority that supports the decision.

72.    DHHS notices do not notify beneficiaries that five days mailing time will be added to the ten-day deadline to request continued benefits pending a hearing.

73.    DHHS does not permit beneficiaries to elect to receive notices electronically.

74.    DHHS notices of Medicaid termination for failure to provide information do not inform beneficiaries that that the case will be reopened if missing information is provided within 90 days.

### D.  Other DHHS Procedures and Practices Causing Medicaid Terminations

75.    Since January 2014, DHHS has instructed county DSS workers to use forms and procedures for Medicaid eligibility review which have resulted in termination of Medicaid for unfair and discriminatory procedural reasons to thousands of persons who were still eligible for Medicaid. Among these procedures and practices are:

a.    Failure to permit Medicaid beneficiaries to complete the renewal process online;

b.    Failure to provide reasonable access by telephone to the beneficiary's caseworker in order permit the review to be completed over the phone or to obtain assistance from the caseworker;

c.    Failure to permit beneficiaries to elect to receive via electronic means (such as email or text) requests for information to complete the review;

d.    Failure to use a prepopulated eligibility review form until November 1, 2017, continued failure after November 1, 2017 to do so for persons who are aged, blind, or disabled as a reasonable accommodation of their disabilities, continued failure after November 1, 2017 to accurately prepopulate the form, and requesting

14

information on the prepopulated form that is not needed to determine eligibility or that the agency already has;

e.   Failure to assure that each Medicaid beneficiary with limited English proficiency has access to a caseworker who speaks their language or to a qualified interpreter;

f.   Requesting information in English from persons with limited English proficiency;

g.   Failure to review all information already available to the agency through electronic verification or DSS files and to complete the redetermination based on that information before requesting the same information from the beneficiary;

h.   Failure to allow blind and disabled beneficiaries thirty days to respond to a renewal form requesting information as an accommodation of their disabilities;

i.   Requiring beneficiaries to provide information not needed to redetermine their eligibility, including information about persons in the home who are not seeking Medicaid and are not financially responsible for those in the home who are receiving Medicaid;

j.   Failure to request information in language that is clear and understandable to beneficiaries, many of whom have cognitive impairments or limited literacy;

k.   Failure to provide information and assistance in an accessible manner during the redetermination process to persons with disabilities;

l.   Requiring additional verification of eligibility when the applicant's statement is reasonably compatible with information the agency already has;

m.   Requiring that a Social Security Number (SSN) be provided for persons in the home who are not eligible for an SSN or who are not receiving or applying for Medicaid;

15

n. Failure to provide information online, by mail, and verbally about the redetermination process in a manner that is accessible to persons with disabilities or limited English proficiency;

o. Issuing conflicting written instructions to county DSS staff and failure to adequately train county DSS staff on redetermination procedures and requirements.

## VII. STATEMENT OF FACTS AS TO THE NAMED PLAINTIFFS

### A. <u>Named Plaintiff Marcia Elena Quinteros Hawkins:</u>

76. Marcia Elena Quinteros Hawkins is a 54-year-old U.S. Citizen and Mecklenburg County resident. She lives with her two children. She speaks Spanish and does not understand English.

77. Ms. Quinteros Hawkins suffers severe pain in her shoulder, neck and back following an accident several years ago. She also suffers from hypertension, thyroid issues, diabetes, and severe depression. She had to stop working as a waitress in 2016 because of her conditions.

78. She now is able to work only part time in an auto parts store, earning about $200 per month.

79. Due to her multiple physical and mental impairments, Ms. Quinteros Hawkins applied for disability benefits from Social Security in August 2017. Her application was denied on or about October 16, 2017. On Nov 10, 2017, she requested reconsideration of that decision. That request is pending.

80. Ms. Quinteros Hawkins began receiving Medicaid after her daughter was born. She qualified for Medicaid as a parent of a minor child with very low income and assets.

16

81.     On multiple occasions, Ms. Quinteros Hawkins has notified Mecklenburg County DSS that she is experiencing a lot of pain, taking several medications, and is unable to work on a substantial basis due to her medical problems.

82.     On June 30, 2017, Ms. Quinteros Hawkins received a notice that her Medicaid coverage had been renewed through June 30, 2018. This notice was in English.

83.     On July 28, 2017, Ms. Quinteros Hawkins' youngest child turned 18 years of age.

84.     On July 31, 2017, the DHHS computer system NCFAST terminated Ms. Quinteros Hawkins' full Medicaid coverage and transferred her to a type of Medicaid that covers only family planning services such as contraceptives.

85.     DHHS and its agents took no action to determine whether Ms. Quinteros Hawkins remained eligible for Medicaid based on her alleged disability before this termination occurred.

86.     No written notice was sent to Ms. Quinteros Hawkins by DSS or by NCFAST that her full Medicaid coverage was being stopped.

87.     On August 9, 2017, Ms. Quinteros Hawkins went to refill a prescription medication and was informed by the pharmacist that she no longer had Medicaid coverage (except for family planning). She immediately went to Mecklenburg County DSS to find out why her Medicaid was stopped without any written notice to her.  She explained that she urgently needed access to medications including Lexapro, Metformin, Furosemide, Levothyroxine and Metoprolol due to her multiple medical conditions. She spoke with three different DSS caseworkers who all told her that she still had Medicaid coverage as far as they could tell from her file.

88.     After this visit, Ms. Quinteros Hawkins left multiple messages for her DSS caseworker but did not receive a call back. She made follow-up calls to the DSS call center on September 14 to inquire about the status of her Medicaid but no one called her back.

17

89. On September 20, 2017 Ms. Quinteros Hawkins called DSS again. DSS finally confirmed to her that her Medicaid had been terminated by NCFAST on July 31, 2017. The DSS worker she spoke to agreed to "force" NCFAST to reinstate her Medicaid. On the same day, DSS sent a written notice to Ms. Quinteros Hawkins that her Medicaid would again stop on October 31, 2017.

90. Following DHHS instructions, DSS made no effort to determine whether Ms. Quinteros Hawkins is disabled before notifying her that her Medicaid would again be terminated on October 31.

91. The notice of Medicaid termination sent to Ms. Quinteros-Hawkins on September 20, 2017 was in English.

92. The September 20, 2017 termination notice from DSS did not say anything about Ms. Quinteros Hawkins' pending disability application with Social Security or that she could continue to receive Medicaid if found to be disabled by either Social Security or by the Medicaid agency.

93. On October 26, 2017 Ms. Quinteros-Hawkins went to a drug store to get a flu shot and learned that she had no Medicaid coverage. She was not able to get a flu shot and went to a clinic at Carolinas Medical Center to see if they could fill her medications. Carolinas Medical Center also told her that she had no Medicaid coverage and that she could not fill her prescriptions.

94. Ms. Quinteros Hawkins went back to Mecklenburg County DSS once again to notify them that her Medicaid card was not working. The DSS caseworker she spoke to discovered that NCFAST had put a "hold" on her Medicaid for the month of October, again suspending her Medicaid coverage without any notice. The DSS worker was able to release the "hold" that day.

18

95. On October 31, 2017, Ms. Quinteros Hawkins' Medicaid coverage again stopped. She has had no health coverage since that date.

96. Ms. Hawkins needs to take approximately twenty prescribed pills each day. Although she has enrolled at a sliding-scale clinic, the clinic is unable to refill all of her prescriptions.

97. Ms. Hawkins' doctor has recommended physical therapy to help her recover from a recent shoulder surgery, but she is not able to make a therapy appointment because she cannot afford to pay for the treatment.

98. Ms. Hawkins' health is suffering, and she is at serious risk unless and until her Medicaid is reinstated.

**B. Named Plaintiff Alicia Franklin:**

99. Alicia Franklin is a 43-year-old resident of Mecklenburg County who suffers from a mild intellectual disability. She received Social Security disability benefits until 2015 when her benefits stopped because she was able to return to work despite her disability.

100. Ms. Franklin applied for Medicaid benefits for the working disabled on November 22, 2016. Her application was approved on February 20, 2017. Her Medicaid certification period in NCFAST was to set to end on October 31, 2017.

101. On September 5, 2017, Mecklenburg DSS mailed to Ms. Franklin a request for information to complete the annual redetermination of her eligibility.

102. The form was written in complex language Ms. Franklin could not understand. The form allowed Ms. Franklin only 12 days, rather than 30 days, to return the information requested.

103. Mecklenburg DSS was aware of Ms. Franklin's intellectual disability but made no effort to telephone Ms. Franklin to explain the notice to her or to offer her assistance.

19

104.    Ms. Franklin did not learn of the form sent by DSS on September 5 until early October because it had been sent to her old address. Ms. Franklin had moved in June 2017. Mecklenburg DSS had never explained to her that she had to report her new address if she moved. In addition, Ms. Franklin has an email address to which Mecklenburg DSS could have sent the request for information. However, Mecklenburg DSS never informed Ms. Franklin of the option to receive communications by email.

105.    In early October 2017, Ms. Franklin went to Mecklenburg DSS and talked to a case worker to report her new address and to provide her recent paystubs. The worker told Ms. Franklin she needed to provide a recent bank statement. The worker did not ask Ms. Franklin how much was in her bank account or offer to see if that statement was reasonably compatible with information DSS already had. The worker did not tell Ms. Franklin the deadline for providing the bank statement. Even though Mecklenburg DSS was aware of Ms. Franklin's cognitive impairment, the worker did not offer to assist Ms. Franklin by asking her to sign a release form so the worker could request the statement from the bank. The DSS worker also did not notify Ms. Franklin in writing of what information was still needed or of the deadline for providing that information.

106.    On October 11, 2017, Mecklenburg County DSS sent written notice to Ms. Franklin that her Medicaid would stop on October 31, 2017 due to failure to provide information needed to determine her continuing eligibility. This notice contained confusing, contradictory information about the reason for termination, cited inapplicable and obsolete regulations to support the decision, and was written in complex language that Ms. Franklin could not understand.

107.    The termination notice did not inform Ms. Franklin that she had 10 days plus 5 days mailing time to request continued benefits pending appeal.

20

108.     The termination notice did not inform Ms. Franklin that her case would be reopened if the missing information was provided within 90 days.

109.     Mecklenburg DSS made no effort to telephone Ms. Franklin to explain the termination notice to her.

110.     Because she lost her Medicaid, Ms. Franklin no longer has a community guide to help her access the health care and supportive services she needs. Medicaid has stopped paying her Medicare premiums, so she is threatened with losing her Medicare Part B and D coverage.

111.     Ms. Franklin is scheduled to have major surgery on December 7, 2017. She has been told by the provider that because she has no Medicaid coverage, unless she can pay $1400.00 on December 7, she will not be able to have the surgery. Ms. Franklin cannot afford to pay the $1400.00.

112.     Ms. Franklin also had to cancel an appointment with a dentist on November 6, 2017 for a tooth extraction because she did not have Medicaid coverage.

113.     Ms. Franklin's health is suffering, and she is at serious risk unless her Medicaid is promptly reinstated.

   C.  **Named Plaintiff Vanessa Lachowski:**

114.     Vanessa Lachowski is a 38-year-old resident of Charlotte, North Carolina.  Ms. Lachowki is totally disabled due to severe spina bifuda. She is paralyzed from the waist down and has a shunt in her head to remove excess water from her brain. She is confined to a wheelchair and requires total assistance with all of her activities of daily living. Ms. Lachowski receives Social Security disability benefits on the record of her deceased father.

115.     Ms. Lachowski was denied Medicaid benefits in error by Mecklenburg County DSS in 2016.

21

116.    After Ms. Lachowski obtained assistance from Legal Services of Southern Piedmont (LSSP), which is now the Charlotte Center for Legal Advocacy, Mecklenburg DSS eventually reversed its decision and approved Medicaid for her effective January 1, 2016.

117.    Because of her medical condition, Ms. Lachowski was then approved by Medicaid to receive 77 hours per month of personal care services, and Medicaid began paying her Medicare premiums and copayments.

118.    Ms. Lachowski's twelve-month Medicaid certification period ended on December 31, 2016.  Mecklenburg County DSS did not timely process her Medicaid renewal.

119.    The DHHS computer system NCFAST automatically terminated her Medicaid coverage effective December 31, 2016 without any notice to her.

120.    Ms. Lachowski did not learn her Medicaid coverage had ended until early January when her home health agency notified her that, effective January 1, 2017, her personal care services had ended because she no longer was authorized for Medicaid.

121.    Ms. Lachowski's mother tried calling Mecklenburg DSS repeatedly to ask why Medicaid had stopped but was unable to get through to anyone at DSS. No one responded to her voicemails.

122.    With help from her attorneys, Ms. Lachowski's Medicaid was reinstated. However, she went over ten days without personal care services as a result of the interruption in her Medicaid. During this time the only person who could provide care to Ms. Lachowski was her 71-year-old mother, who was awaiting a knee replacement and was not able to lift Ms. Lachowski from her wheelchair. Her mother's sister had to come from Illinois to help care for Ms. Lachowski.

123.    In October 2017, Ms. Lachowski began receiving Medicaid services under the Community Alternative Program for Disabled Adults (CAP-DA). Ms. Lachowski had waited over

22

a year on the waiting list for this program, under which Medicaid increased the amount of her personal care services significantly to almost 30 hours per week. This increase in services has been of great benefit to Ms. Lachowski's health and well-being.

124.    Ms. Lachowski is due to have her Medicaid eligibility reviewed again before December 31, 2017. To date she has received no renewal form or any other communication from DSS about renewing her Medicaid.

125.    It is already too late for DSS to request information from her, allow her 30 days to provide that information, and then send her ten-day advance notice if her Medicaid is terminated effective December 31, 2017.

126.    Because NCFAST programming has not changed, because Mecklenburg County DSS continues to fail to timely process large numbers of Medicaid renewals, because Mecklenburg DSS previously incorrectly denied her Medicaid, and because of previous difficulties in reaching her DSS worker by phone, she and her mother reasonably expect that her Medicaid is likely to be terminated again effective January 1, 2018 without proper notice or the right to a pre-termination hearing.

127.    If Ms. Lachowski's Medicaid is terminated again, her personal care services will stop again.  Also, if she loses her Medicaid coverage, Ms. Lachowski will be terminated from the CAP-DA program.  If that occurs, she is likely to have to wait another year or more on the waiting list to get CAP-DA services again. This likelihood threatens Ms. Lachowski with irreparable harm.

## VIII. CAUSES OF ACTION

### A. First Cause of Action: Violation of the Medicaid Act, 42 U.S.C. §§ 1396a(a)(3), (8), (10)

128.    Plaintiffs incorporate and re-allege paragraphs 1 through 127, as if set forth fully herein.

23

129.     Defendant's policy and practice of terminating or suspending Medicaid coverage without first correctly redetermining eligibility, including consideration of all Medicaid eligibility categories, violates plaintiffs' and class members' rights under 42 U.S.C. § 1396a(a)(8) & 1396a(a)(10), to continue receiving Medicaid until determined to be ineligible. This violation of federal law is actionable pursuant to 42 U.S.C. § 1983.

130.     Defendant's policy and practice of failing to provide adequate and timely written notice and the right to a hearing prior to terminating Medicaid coverage violates plaintiffs' and class members' statutory notice and hearing rights under 42 U.S.C. § 1396a(a)(3). This violation of federal law is actionable pursuant to 42 U.S.C. § 1983.

### B.  Second Cause of Action:  Americans with Disabilities Act (ADA)

131.     Plaintiffs incorporate and re-allege paragraphs 1 through 130, as if set forth fully herein.

132.     Defendant Cohen is Secretary of the Department of Health and Human Services, which is a public entity under the ADA.

133.     Each Named Plaintiff and many members of the class are a "qualified individual with a disability" within the meaning of the ADA in that they (1) have a physical or mental impairment that substantially limits one or more major life activities; and (2) meet the essential requirements for the North Carolina Medicaid program with reasonable modifications to the rules, policies, and practices of the program.  42 U.S.C. § 12131(2).

134.     Defendant's termination of Medicaid coverage for Plaintiffs and many members of the Plaintiff class based upon procedures which fail to accommodate Medicaid beneficiaries' disabilities constitutes use of methods of administration which unlawfully discriminate in violation of Title II of the ADA, 42 U.S.C. § 12132.

135. Defendants have utilized criteria and methods of administration that fail to accommodate disabilities, exclude Plaintiffs with disabilities from participation in the Medicaid program, and subject Plaintiffs with disabilities to discrimination on the basis of their disability, by failing to ensure that Plaintiffs have access to Medicaid coverage to obtain the services they need, in violation of Title II of the ADA, 42 U.S.C. § 12132.

### C. Third Cause of Action: Section 1557 of the Affordable Care Act

136. Plaintiffs incorporate and re-allege paragraphs 1 through 135, as if set forth fully herein.

137. Defendant and her agents have utilized methods of administration that subject Plaintiffs and many members of the Plaintiff class to discrimination on the basis of their disability or national origin (including limited English proficiency) or both, thus failing to ensure that Plaintiffs have continued access to Medicaid coverage.

138. Defendant's actions violate Section 1557 of the ACA, 42 U.S.C. § 18116. This violation of federal law is actionable pursuant to 42 U.S.C. § 1983.

### D. Fourth Cause of Action: Constitutional Due Process

139. Plaintiffs incorporate and re-allege paragraphs 1 through 138, as if fully set forth herein.

140. Defendant and her agents' practice of failing to assure adequate and timely written notice and the right to a pre-termination hearing before Medicaid is terminated violates plaintiffs' and plaintiff class members' rights under the Due Process Clause of the Fourteenth Amendment of the United States Constitution. This violation of federal law is actionable pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment to the U.S. Constitution.

141.    Defendant's practices and procedures alleged herein also violate the Due Process clause of the Fourteenth Amendment to the U.S. Constitution by terminating Medicaid coverage of the Plaintiffs and Plaintiff class pursuant to an unfair and arbitrary decision-making process. This violation of federal law is actionable pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment to the U.S. Constitution.

## IX.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1.    Certify this action as a class action pursuant to Fed. R. Civ. P. 23;

2.    Issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 that: (a) Defendant's written policies, procedures, and practices governing eligibility reviews for Medicaid violate the federal Medicaid statute, 42 U.S.C. § 1396a(a)(3) and (a)(8), Section II of the Americans with Disabilities Act, Section 1557 of the Affordable Care Act, and the Due Process Clause of the Fourteenth Amendment;

3.    Grant a preliminary and permanent injunction requiring the Defendant, her agents, successors, and employees from continuing the agency's illegal policies and practices and to reinstate Medicaid coverage to all affected class members until their Medicaid eligibility has been properly redetermined under all eligibility categories, under procedures that reasonably accommodate disabilities and limited English proficiency, and until adequate and timely notice of termination has been provided to them;

4.    Retain jurisdiction over this action to insure Defendant's compliance with the mandates of the Court's Orders;

5.    Award to the Plaintiffs costs and reasonable attorney fees pursuant to 42 U.S.C. § 1988; and

6. Order such other relief as this Court deems just and equitable.

Dated: November 21, 2017

ATTORNEYS FOR PLAINTIFF AND PLAINTIFF CLASS

/s/ Douglas S. Sea
Douglas Stuart Sea
State Bar No. 9455
CHARLOTTE CENTER FOR LEGAL ADVOCACY, INC.
1431 Elizabeth Avenue
Charlotte, North Carolina 28204
Telephone: (704) 971-2593
dougs@charlottelegaladvocacy.org

/s/ Jane Perkins
Jane Perkins
State Bar No. 9993
NATIONAL HEALTH LAW PROGRAM
200 N. Greensboro Street,
Ste. D-13
Carrboro, NC 27510
Telephone: (919) 968-6308
perkins@healthlaw.org

27