IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:17-CV-581-FL

| | | |
|---|---|---|
| MARCIA ELENA QUINTEROS HAWKINS, ALICIA FRANKLIN, VANESSA LACHOWSKI, AND KYANNA SHIPP, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| MANDY COHEN, in her official capacity as Secretary of the North Carolina Department of Health and Human Services, | ) ) ) ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on plaintiffs' motion to certify class (DE 17), defendant's motion to dismiss (DE 32), and plaintiffs' motion for preliminary injunction (DE 37). The motions have been fully briefed, and the issues raised are ripe for ruling. For the following reasons, each motion is granted in part and denied in part.

## STATEMENT OF THE CASE

Plaintiffs commenced this putative class action on November 21, 2017, and filed corrected amended complaint on December 6, 2017, alleging violations by defendant of provisions of the federal Medicaid Act, 42 U.S.C. § 1396a; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; section 1557 of the Affordable Care Act ("ACA"), 42 U.S.C. § 18116; and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. As described in more detail

herein, plaintiffs challenge policies and procedures of defendant that allegedly caused plaintiffs and others similarly situated to lose Medicaid benefits without sufficient notice, without adequate determination of eligibility for benefits, and without reasonable accommodation of disabilities and language barriers.

As relief, plaintiffs seek class certification, declaratory relief, and a preliminary and permanent injunction prohibiting defendant from continuing her unlawful policies and practices, and requiring defendant to reinstate Medicaid coverage to plaintiffs and all affected class members "until their Medicaid eligibility has been properly redetermined under all eligibility categories, under procedures that reasonably accommodate disabilities and limited English proficiency, and until adequate and timely notice of termination has been provided to them." (Compl. at 27-28).[1] Plaintiffs also seek an award of costs and reasonable attorney's fees.

In their motion to certify class, plaintiffs seek certification of an overarching class and three subclasses. In particular, plaintiffs propose a class defined as:

> All individuals whose Medicaid coverage was, is, or will be interrupted or terminated, effective January 1, 2014 or later, by Defendant Secretary of the North Carolina Department of Health and Human Services [hereinafter "DHHS"], or any of her employees, contractors, agents, or assigns, without first making an individualized determination of ineligibility under all Medicaid eligibility categories.

Plaintiffs propose three subclasses as follows:

> Subclass One: All individuals whose Medicaid coverage was, is, or will be terminated or interrupted, effective January 1, 2014 or later, by Defendant Secretary of DHHS, or any of her employees, contractors, agents, or assigns, without first making an individualized determination of ineligibility under all Medicaid eligibility categories and without first sending the beneficiary at least 10-day prior written notice of the termination of Medicaid that describes the specific reasons for the

---

[1] Hereinafter, all references to the "complaint" in the text, or "Compl." in citations, are to the corrected amended complaint (DE 12).

termination, the specific regulation supporting the termination, and the right to a pre-termination hearing.

Subclass Two: All individuals for whom Medicaid coverage was, is, or will be terminated or interrupted, effective January 1, 2014 or later, by Defendant Secretary of DHHS, or any of her employees, contractors, agents, or assigns without first making an individualized determination of ineligibility under all Medicaid eligibility categories and without accommodating the beneficiary's disability during the eligibility redetermination process.

Subclass Three: All individuals for whom Medicaid coverage was, is, or will be terminated or interrupted, effective January 1, 2014 or later, by Defendant Secretary of DHHS, or any of her employees, contractors, agents, or assigns, without first making an individualized determination of ineligibility under all Medicaid eligibility categories and without communicating during the redetermination process in the beneficiary's primary language where the beneficiary has limited English proficiency.

In support of their motion to certify class, plaintiffs rely upon declarations by plaintiffs and their current counsel, with exhibits attached thereto including: 1) DHHS fiscal reports and reports of pending recertifications by date and county; 2) letters from DHHS to county social services departments; 3) an August 4, 2017, email from counsel for defendant to counsel for plaintiffs regarding DHHS monthly reports; 4) a DHHS form DS-8110 titled "Your Benefits are Changing"; 5) a DHHS "Family and Children's Medicaid Manual MA-3420"; 6) a DHHS form DS-8110 sent to plaintiff Marcia Elena Quinteros Hawkins ("Hawkins"); and 7) tables regarding English proficiency and disability in certain populations.

Defendant filed a response to the complaint, on February 5, 2018, in the form of the instant motion to dismiss, which seeks dismissal of all claims for failure to state a claim upon which relief can be granted, as well as dismissal of claims against plaintiff Vanessa Lachowski ("Lachowski") for lack of standing. Defendant also filed a response in opposition to plaintiffs' motion to certify class.

Plaintiffs filed the instant motion for preliminary injunction on February 13, 2018. Plaintiffs seek preliminary injunction on the basis of a subset of claims in the complaint, and plaintiffs seek preliminary injunctive relief more narrowly than the preliminary and permanent injunctive relief sought in the complaint. In particular, plaintiffs move the court "to enjoin Defendant and her agents from terminating Medicaid benefits of the named plaintiffs and members of the proposed Plaintiff class without first determining ineligibility under all Medicaid categories, including Medicaid based on an alleged disability, and providing timely and adequate written notice and the opportunity for a pre-termination hearing." (Mot. (DE 37) at 1). Plaintiffs do not seek preliminary relief on the basis of their claims under the Americans with Disabilities Act or section 1557 of the Affordable Care Act, but reserve those allegations and claims for discovery and trial. Plaintiffs also reserve for trial their request to reinstate those who have been illegally terminated since January 2014.

In support of the instant motion for preliminary injunction, plaintiffs rely upon declarations by counsel and paralegals, with exhibits attached thereto including, in further supplement to materials already filed in support of class certification: 1) additional DHHS fiscal reports and reports of pending recertifications by date and county, 2) additional letters and reports from DHHS to county social services departments, 3) additional portions of DHHS Medicaid manuals and training materials, 4) reports issued by the Social Security Administration, 5) Mecklenburg county social services department correspondence and notices regarding plaintiffs as well as other individuals, including Leroy Rivers ("Rivers"), Johanna Espino Martinez, Alma Miranda Reyes ("Reyes"), and Dequavius Bowman. Plaintiffs also rely upon declarations by plaintiffs Hawkins and Lachowski, as well as Reyes, Rivers, Jerry Hedger, and Tarren Turrubates, who received notices from Mecklenburg county social services department.

In opposition to the preliminary injunction motion, defendant relies upon 1) an affidavit of Carolyn McClanahan ("McClanahan"), who serves as the associate director of DHHS Medicaid Eligibility Services, 2) excerpts of DHHS manuals, 3) a letter from DHHS to county social services departments, 4) Mecklenburg county social services department notices sent to plaintiffs Hawkins, Franklin, Lachowski, as well as another individual, Lakeisha R. O'Fair, mother of plaintiff Shipp.

Plaintiffs replied in support of their preliminary injunction motion on March 14, 2018, wherein they modify their request for preliminary injunctive relief. Plaintiffs now request the following preliminary injunction:

> 1) immediately cease automatic computer-generated terminations of Medicaid without first sending timely, adequate notice; 2) immediately cease terminations of Medicaid where the beneficiary has not been determined ineligible under all Medicaid categories, including categories based on disability if disability is alleged during the redetermination process upon inquiry by Defendant; 3) provide the right to a de novo pre-termination hearing, including on the issue of disability.

(Reply (DE 53) at 6). Plaintiffs filed a notice of suggestion of subsequently controlling authority on July 5, 2018.

## STATEMENT OF FACTS

The facts alleged in the complaint may be summarized as follows.

A.    Medicaid Administration in North Carolina

North Carolina has elected to participate in the Medicaid program, which entitles North Carolina to receive federal funds for Medicaid services provided to eligible beneficiaries, including families with dependent children and aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services. Defendant is the Secretary of DHHS, which administers the Medicaid program in North Carolina, and which directs policies

and procedures governing the processing of Medicaid eligibility determinations and redeterminations by all 100 county departments of social services ("DSS") in North Carolina.

According to the complaint, defendant has put in place a "computer system called NCFAST" that presently is programmed to cause automatic terminations of Medicaid benefits without notice to individuals who previously received Medicaid benefits. (Compl. ¶ 51). In particular, "[a]bsent timely action" by an individual county DSS upon periodic re-eligibility review or upon changes in family circumstance, NCFAST is programmed to automatically terminate Medicaid benefits in three scenarios:

1)     "[A]t the end of [a] twelve-month authorization period regardless of whether the beneficiary is still eligible for Medicaid." (Id. ¶ 57).

2)     "[F]or a parent or other caretaker at the end of the month in which the youngest child turns age eighteen, regardless of whether the parent or caretaker continues to be eligible for Medicaid based on her disability, pregnancy, or age." (Id. ¶ 58).

3)     "[F]or a child who turns age nineteen, regardless of whether the child remains eligible for Medicaid under the category for children ages 19 and 20 or is disabled." (Id. ¶ 59).

Such automatic terminations occur "without any written notice to the Medicaid beneficiary that his or her Medicaid coverage has stopped or of the right to appeal this action." (Id. ¶ 60). "[T]ens of thousands" of North Carolina Medicaid beneficiaries have had their Medication coverage stopped in this manner, including in Mecklenburg County and all 100 North Carolina counties. (Id. ¶ 61).

According to the complaint, defendant also has put in place policies and procedures that prevent proper consideration of all medicaid eligibility categories before termination of existing benefits. In particular, where a Medicaid beneficiary is receiving Medicaid benefits under a

Medicaid category not requiring proof of disability, and the Medicaid beneficiary loses eligibility under such category, "DHHS policy instructions prohibit determination of whether the individual is eligible for Medicaid based on her alleged disability before terminating her Medicaid benefits." (Id. ¶ 67). "[T]he notice of termination in these cases does not notify the person alleging disability that Medicaid eligibility based on disability was not considered, nor of the right to appeal and obtain a pre-termination hearing on whether she qualifies for Medicaid based on disability, nor of the right to reapply for Medicaid based on her disability." (Id. ¶ 69). This policy causes "hundreds" of individuals in North Carolina each year to be terminated from Medicaid without consideration of their eligibility under all Medicaid categories. (Id. ¶ 68).

B.    Individual Plaintiffs

    1.    Hawkins

Hawkins is a 54-year-old Mecklenburg County resident who "speaks Spanish and does not understand English." (Id. ¶ 77). Hawkins began receiving Medicaid benefits in or before 1999, as a parent of a minor child with very low income and assets. (See id. ¶ 81). On July 28, 2017, Hawkins's youngest child turned 18 years of age. On July 31, 2017 "the DHHS computer system NCFAST terminated" Hawkins's Medicaid benefits. (Id. ¶ 85). Prior to that date, on multiple occasions, Hawkins had "notified Mecklenburg County DSS[2] that she is experiencing a lot of pain, taking several medications, and is unable to work on a substantial basis due to her medical problems." (Id. ¶ 82). "DHHS and its agents took no action to determine whether [Hawkins] remained eligible for Medicaid based on her alleged disability before this termination occurred." (Id.

---

    [2]  Hereinafter, all references to "DSS" are to Mecklenburg County DSS unless otherwise specified.

¶ 86). "No written notice was sent to [Hawkins] by DSS or by NCFAST that her full Medicaid coverage was being stopped." (Id. ¶ 87).

On August 9, 2017, a pharmacy informed Hawkins that she no longer had Medicaid benefits. Hawkins applied for Social Security disability benefits in August 2017. DSS informed Hawkins on September 20, 2017, that her Medicaid benefits had been terminated by NCFAST on July 31, 2017, and that DSS had manually reinstated her Medicaid benefits. That same day, however, DSS sent Hawkins notice that her Medicaid benefits would again be terminated on October 31, 2017.

The September 20, 2017, termination notice was in English and did not say anything about Hawkins's pending disability application, nor that she could continue to receive Medicaid benefits if found to be disabled by either the Social Security or the Medicaid agency. DSS did not make any effort to determine whether Hawkins was disabled before sending the September 20, 2017, termination notice. On October 31, 2017, Hawkins's Medicaid benefits terminated, and she has had no Medicaid benefits since then. She is not able to fill all necessary prescriptions, she is not able to pay for recommended physical therapy for a shoulder injury, and her health is suffering.

2.      Franklin

Franklin is a 43-year-old Mecklenburg County resident "who suffers from a mild intellectual disability." (Id. ¶ 100). "She received Social Security disability benefits until 2015 when her benefits stopped because she was able to return to work despite her disability." (Id.). "Franklin applied for Medicaid benefits for the working disabled on November 22, 2016." (Id. ¶ 101). Her application was approved February 20, 2017. "Her Medicaid certification period in NCFAST was to set to end on October 31, 2017." (Id.).

"On September 5, 2017, Mecklenburg DSS mailed to Ms. Franklin a request for information to complete the annual redetermination of her eligibility." (Id. ¶ 102). "The form was written in complex language [Franklin] could not understand." (Id. ¶ 103). "The form allowed Ms. Franklin only 12 days, rather than 30 days, to return the information requested." (Id.). "DSS was aware of [Franklin's] intellectual disability but made no effort to telephone [Franklin] to explain the notice to her or to offer her assistance." (Id. ¶ 104). "Franklin did not learn of the form sent by DSS on September 5 until early October because it had been sent to her old address." (Id. ¶ 105). In early October 2017, Franklin spoke to a DSS case worker about providing documentation.

On October 11, 2017, DSS sent a notice to Franklin that her Medicaid benefits would stop on October 31, 2017, due to failure to provide information needed to determine her continuing eligibility. The notice was written in complex language that Franklin could not understand and it contained confusing, contradictory, and out of date information. It did not inform her of time to request continued benefits pending appeal, or that her case could be reopened upon provision of missing documentation within 90 days. DSS did not telephone Franklin to explain the notice. Since her Medicaid benefits have been terminated, she has lost a community guide, cannot afford scheduled surgery, cannot afford dental procedure, and her health is suffering. She is also at risk of losing certain Medicare coverage due to inability to pay.

3.    Lachowski

Lachowski is a 38-year-old Mecklenburg County resident who is totally disabled due to severe spina bifida. "Lachowski receives Social Security disability benefits on the record of her deceased father." (Id. ¶ 115). Lachowski was approved for Medicaid effective January 1, 2016, including to receive 77 hours per month of personal care services, with Medicaid paying her

Medicare premiums and copayments. A 12-month periodic certification period for Lachowski ended on December 31, 2016; however, Mecklenburg County DSS did not timely process her Medicaid renewal. "The DHHS computer system NCFAST automatically terminated her Medicaid coverage effective December 31, 2016 without any notice to her." (Id. ¶ 120).

"With help from her attorneys, [Lachowski's] Medicaid was reinstated [in January 2017]. However, she went over ten days without personal care services as a result of the interruption in her Medicaid." (Id. ¶ 123). As of the time of filing of the complaint, Lachowski was due to have her Medicaid eligibility renewed again before December 31, 2017; however, DSS was delayed in requesting information from her and did not leave enough time to submit the information to leave time for advance notice before that date. "Because NCFAST programming has not changed," and because of Lachowski's previous difficulties, she and her mother reasonably expect her Medicaid is likely to be terminated again without notice." (Id. ¶ 128). If it is terminated again without notice, her personal care services will stop again. In addition, she will lose coverage for additional services under a Community Alternative Program for Disabled Adults, and is likely to have to wait another year on waitlist to get reinstated.

4. Shipp

Shipp is a 19-year-old Mecklenburg County resident, who suffers from epilepsy. Until November 30, 2017, Shipp was enrolled in Medicaid based upon being under 19 years old. Shipp's mother previously applied for Social Security disability benefits for Shipp, and the application was denied, with appeal remaining pending. Shipp's Medicaid benefits were terminated November 30, 2017, without notice or opportunity for pre-termination hearing. DSS did not request any information from Shipp or her mother, nor make any effort to determine whether Shipp was

disabled, before Shipp's Medicaid benefits stopped. A pharmacy told Shipp's mother on December 2, 2017, that Shipp no longer has Medicaid coverage, and Shipp and her mother are unable to afford to refill a necessary prescription for epilepsy.

* * *

The court sets forth below in more detail, in the analysis of the motion to certify class and motion for preliminary injunction, additional facts pertinent to those motions.

## COURT'S DISCUSSION

A.   Motion to Dismiss

1.   Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

When addressing a motion to dismiss for lack of standing, pursuant to Rule 12(b)(1), as defendant asserts in part here, the court accepts the facts of the complaint as true in the same manner as under Rule 12(b)(6), where defendant raises a "facial challenge[] to standing that do[es] not

dispute the jurisdictional facts alleged in the complaint." <u>Kenny v. Wilson</u>, 885 F.3d 280, 287 (4th Cir. 2018).

        2.     Analysis

           a.     Medicaid Act and Due Process Claims

Defendant moves to dismiss plaintiffs' Medicaid Act and due process claims for lack of subject matter jurisdiction due to failure to exhaust state administrative remedies. For the reasons stated below, however, exhaustion of state administrative remedies is not a prerequisite for the claims asserted.

Plaintiffs' first cause of action is for violation of the Medicaid Act, 42 U.S.C. § 1396a, premised upon defendant's failure to provide adequate notice and right to hearing prior to terminating Medicaid benefits, and upon defendant's policy of terminating benefits without considering all Medicaid eligibility categories, particularly disability. Plaintiffs' fourth cause of action is for violation of the Due Process Clause based also on failure to provide adequate notice and right to hearing. Claims for violation of the Medicaid Act, § 1396a, and the Due Process Clause may be brought pursuant to 42 U.S.C. § 1983, which provides a cause of action for deprivation of rights secured by the Constitution and laws of the United States. <u>See</u> <u>Goldberg v. Kelly</u>, 397 U.S. 254, 261 (1970) (due process claim under § 1983); <u>Doe v. Kidd</u>, 501 F.3d 348, 357 (4th Cir. 2007) (Medicaid Act, 42 U.S.C. § 1396a, claim under § 1983).

"[S]tate administrative remedies need not be exhausted where the federal court plaintiff states an otherwise good cause of action under 42 U.S.C. § 1983." <u>Gibson v. Berryhill</u>, 411 U.S. 564, 574 (1973); <u>see</u> <u>Patsy v. Bd. of Regents of State of Fla.</u>, 457 U.S. 496, 516 (1982); <u>see, e.g.</u>, <u>McCartney ex rel. McCartney v. Cansler</u>, 608 F. Supp. 2d 694, 702 (E.D.N.C. 2009) (same, in

context of Medicaid Act claim); Westminister Nursing Ctr. v. Cohen, No. 5:17-CV-96-FL, 2017 WL 5632661, at *9 (E.D.N.C. Nov. 22, 2017) (same); L.S. by & through Ron S. v. Delia, No. 5:11-CV-354-FL, 2012 WL 12911052, at *10 n. 9 (E.D.N.C. Mar. 29, 2012) (same). Accordingly, where plaintiffs seek to use § 1983 to remedy a deprivation of rights under the Medicaid Act and the Due Process Clause, plaintiffs need not exhaust state administrative remedies prior to bringing suit.

Authorities cited by defendant to the contrary are inapposite. For example, defendant cites North Carolina Court of Appeals cases for the proposition that, where the North Carolina has provided administrative remedies under the North Carolina Administrative Procedures Act, a plaintiff must exhaust such remedies prior to bringing suit. See, e.g., Shell Island Homeowners Ass'n, Inc. v. Tomlinson, 134 N.C. App. 217, 221 (1999); Porter v. N. Carolina Dep't of Ins., 40 N.C. App. 376, 380 (1979). Those cases, however, concern challenges to state agency rulemaking, and they did not involve claims brought pursuant to 42 U.S.C. § 1983. See id. Defendant also cites Googerdy v. N. Carolina Agr. & Tech. State Univ., 386 F. Supp. 2d 618 (M.D.N.C. 2005), a case where a plaintiff brought Title VII and § 1983 claims for employment discrimination against a state university. Failure to exhaust, however, was discussed there with respect to a state claim for breach of employment contract, not the § 1983 claim. See id. at 625 & 627.

In sum, defendant's argument based upon failure to exhaust administrative remedies is misplaced, and defendant's motion to dismiss on this ground thus must be denied. Because defendant's motion to dismiss only raises the issue of exhaustion with respect to plaintiffs' Medicaid Act and due process claims, the court reserves for later address in this order consideration of other potential issues with the merits of all asserted components of these claims.

b. ADA claim

Defendant seeks dismissal of plaintiffs' ADA claim for failure to state a claim upon which relief can be granted. Plaintiffs' ADA claim is based on the assertion that plaintiffs are "qualified individual[s] with a disability," that they are excluded from Medicaid benefits on the basis of their disability, and that defendant's procedures "fail to accommodate" their disabilities. (Compl. ¶¶ 145-147).

The ADA provides in pertinent part:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. A plaintiff seeking relief under this provision "must allege that (1) she has a disability, (2) she is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) she was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of her disability." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 498 (4th Cir. 2005).

Defendant does not dispute the sufficiency of plaintiffs' allegations for the first two elements, but rather contends that plaintiffs have not alleged discrimination "on the basis of" their disabilities. (Def's Mem. (DE 33) at 9 (quoting Constantine, 411 F.3d at 498)). The court agrees. A plaintiff seeking relief under this provision of the ADA "must prove that disability 'played a motivating role' in the adverse action." Constantine, 411 F.3d at 498 n. 17 (quoting Baird ex rel. Baird v. Rose, 192 F.3d 462, 470 (4th Cir. 1999)). The Fourth Circuit has recognized that this standard is akin to the requirement under Title VII that unlawful discrimination "was a motivating

factor for any employment practice, even though other factors also motivated the practice." <u>Baird</u>, 192 F.3d at 470 (quoting 42 U.S.C. § 2000e-2(m)).

Here, plaintiffs have not alleged sufficient facts to permit an inference that the disability of any of the plaintiffs "was a motivating factor" in the denial of Medicaid benefits. <u>Id.</u> The complaint lacks allegations that defendant was motivated, in any part, by plaintiffs' disability in denying Medicaid benefits. Indeed, the complaint alleges that Medicaid benefits for Hawkins, Shipp, and Lachowski were terminated automatically, due to programming of the NCFast computer system to terminate benefits upon a change in family circumstances or upon expiration of a renewal term. (Compl. ¶¶ 85, 120, 138). Medicaid benefits for Franklin were terminated after she failed to provide necessary documentation. (<u>Id.</u> ¶ 107).

Plaintiffs argue that the allegations about Franklin are sufficient to meet the standard because the DSS was aware that Franklin had a "mild intellectual disability," but made no effort to assist Franklin in reviewing forms, gathering information, and providing information to DSS. (Pls' Resp. (DE 52) at 7-8). Plaintiffs contend these facts suggest that Franklin's disability "contributed and played a substantial role in her termination from Medicaid." (<u>Id.</u>). But this argument applies the wrong standard. The question is not whether her disability "contributed and played a substantial role in her termination," but rather whether her disability "'played a <u>motivating</u> role' in the adverse action." <u>Constantine</u>, 411 F.3d at 498 n. 17 (emphasis added). Plaintiffs's allegations are missing the key element of disability "motivating" defendant in the denial of benefits, <u>e.g.</u>, that the DSS worker was motivated by Franklin's disability in causing the denial of her Medicaid benefits, and that the same motive can be imputed to defendant.

While it is conceivable that plaintiffs could allege facts permitting an inference of such motivation in denying Franklin's Medicaid benefits, plaintiffs have not done so. The present factual allegations are insufficient to nudge the claim from conceivable to plausible. Accordingly, plaintiffs' ADA claim as it relates to Franklin must be dismissed without prejudice.

Plaintiffs also argue that disability "contributed to the termination of" Hawkins and Shipp because their Medicaid benefits were terminated under a policy that expressly excludes consideration of their alleged disabilities and "ignores by design" their disabilities. (Pls' Mem. (DE 52) at 9). In so arguing, however, plaintiffs again do not account for the element that "disability 'played a motivating role' in the adverse action," Constantine, 411 F.3d at 498 n. 17, or that they were "denied the benefits" "by reason of such disability." 42 U.S.C. § 12132. Where defendant allegedly considered only age criteria in terminating Hawkins and Shipp, and defendant expressly did not consider other potential qualifying factors, such as disability, that decision may violate the Medicaid Act, as plaintiffs have asserted in their first claim, but that decision is not motivated by, or made "by reason of," such disability such that it constitutes a violation of the ADA. 42 U.S.C. § 12312; see Constantine, 411 F.3d at 498 n. 17.

In so holding, the court notes that plaintiffs' ADA theory of relief for Franklin is categorically different from that of Hawkins and Shipp. While plaintiffs may be able to amend their complaint to state a plausible ADA claim for Franklin, their ADA theory of relief for Hawkins and Shipp fails as a matter of law. Accordingly, plaintiffs' ADA claim brought on behalf of Franklin is dismissed without prejudice, and plaintiffs' ADA claim brought on behalf of Hawkins and Shipp is dismissed with prejudice. In sum, defendant's motion to dismiss is granted in this part.

c.    ACA claim

Defendant seeks dismissal of plaintiffs' ACA claim for failure to state a claim upon which relief can be granted. Plaintiffs' ACA claim is based on the assertion that "Defendant and her agents have utilized methods of administration that subject Plaintiffs and many members of the Plaintiff class to discrimination on the basis of their disability or national origin (including limited English proficiency) or both, thus failing to ensure that Plaintiffs have continued access to Medicaid coverage." (Compl. ¶ 149). Plaintiffs assert that such actions violate Section 1557 of the ACA, 42 U.S.C. § 18116.

> Section 1557 of the ACA provides, in pertinent part:
>
> Except as otherwise provided for in this title (or an amendment made by this title), an individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), or section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments). The enforcement mechanisms provided for and available under such title VI, title IX, section 504, or such Age Discrimination Act shall apply for purposes of violations of this subsection.

42 U.S.C. § 18116(a). Plaintiffs do not specify which incorporated federal statute forms the basis for the ACA violation asserted in the complaint. Based upon the allegations in the complaint, the court reasonably can rule out Title IX and the Age Discrimination Act. This leaves Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d et seq.) and section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794).

Title VI of the Civil Rights Act of 1964 provides in pertinent part:

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d. Section 504 of the Rehabilitation Act provides:

No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794.

Title VI of the Civil Rights Act "prohibits only intentional discrimination." Alexander v. Sandoval, 532 U.S. 275, 280 (2001). Similarly, section 504 of the Rehabilitation Act, like the ADA, prohibits discrimination "on the basis of [a] disability." Constantine, 411 F.3d at 498. Moreover, while a "plaintiff seeking relief under Title II of the ADA must prove that disability played a motivating role in the adverse action, . . . a plaintiff seeking relief under § 504 of the Rehabilitation Act must prove that the defendants' discriminatory conduct was solely by reason of the plaintiff's disability." Id. at 498 n. 17.

Plaintiffs assert their ACA claim in part on the basis of discrimination due to disability. Because the causation element for disability discrimination under the Rehabilitation act is stricter than that under the ADA, see id., the court incorporates herein its prior analysis of plaintiffs' ADA disability claims. Accordingly plaintiffs' ACA claim premised upon disability discrimination against plaintiff Franklin is dismissed without prejudice, and plaintiffs' ACA claim premised upon disability discrimination against remaining plaintiffs is dismissed with prejudice.

Plaintiffs' discrimination claim based upon Hawkins's "limited English proficiency" is subject to an analysis similar to plaintiffs' disability claims. Because Title VI "prohibits only

intentional discrimination," Sandoval, 532 U.S. at 280, plaintiffs must demonstrate, at a minimum, that such limited English proficiency played a "motivating role" in denial of Medicaid benefits. Constantine, 411 F.3d at 498 n.17; cf. Franks v. Ross, 293 F. Supp. 2d 599, 607 (E.D.N.C. 2003) (finding valid claim under Title VI where plaintiffs "have alleged intentional discrimination"); see also Tyner v. Brunswick Cty. Dep't of Soc. Servs., 776 F. Supp. 2d 133, 153 (E.D.N.C. 2011) ("The actionable conduct, as the court understands it, is alleged to have been the defendants' intentional refusal, in the face of the severely hearing-impaired plaintiffs' repeated requests, for ASL interpreter services during a six-month child abuse investigation by state and local governmental entities.") (emphasis added).

Here, plaintiffs' allegations do not permit an inference that defendant, or her agents, intentionally discriminated against Hawkins by providing written notices in English. Although the complaint alleges that Hawkins "speaks Spanish and does not understand English," there is no allegation that Hawkins ever requested notices in Spanish, despite having receiving Medicaid benefits at least 18 years prior. (Compl. ¶¶ 81, 84). She "spoke with three different DSS case workers" on August 9, 2017; she spoke to a DSS caseworker on September 20, 2017; she again spoke to a DSS caseworker about October 26, 2017, after receiving her termination notice in English. (Id. ¶¶ 88-89, 90, 95). It is not reasonable to infer from these allegations that defendant intentionally discriminated against Hawkins on the basis of her limited English proficiency. While it is conceivable that plaintiffs could allege further facts to permit an inference that discrimination motivated the denial of Hawkins's benefits, plaintiffs have not done. Accordingly, plaintiffs' claims premised upon discrimination against Hawkins due to limited English proficiency is dismissed without prejudice.

In opposing dismissal of their ACA claim, plaintiffs suggest that their ACA claim properly is evaluated according to standards set forth in federal regulations "implementing Section 1557," including: 1) 45 C.F.R. § 92.202, which provides that DHHS "shall take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others in health programs and activities, in accordance with" standards set forth in the regulations; and 2) 45 C.F.R. § 92.201(a), which provides that DHHS "shall take reasonable steps to provide meaningful access to each individual with limited English proficiency eligible to be served or likely to be encountered in its health programs and activities." (Pls' Mem. (DE 52) at 11, 13). Plaintiffs do not, however, demonstrate how these standards bypass the requirements for stating a discrimination claim under the ACA, through incorporation of Title VI or section 504 of the Rehabilitation Act, as confirmed by Constantine, 411 F.3d at 498. Indeed neither defendant nor plaintiffs cite any case law with respect to the ACA claim. To the extent plaintiffs seek to assert an ACA claim in a manner expanding the Constantine standard for a discrimination claim, plaintiffs have not at this juncture demonstrated a basis for doing so.

In sum, plaintiffs' ACA claim is dismissed without prejudice, in part, and with prejudice, in part, as set forth herein. Defendant's motion to dismiss in this part is granted.

d.     Lachowski

Defendant seeks dismissal of Lachowski's claims[3] on the basis that Lachowski has not suffered an injury in fact and thus lacks standing. To possess standing to sue, a plaintiff must demonstrate that they have an "injury in fact," that is "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016) (quotations omitted). The issue raised by defendant's motion is whether Lachowski's injury is actual or imminent, where her Medicaid benefits were reinstated and the complaint does not state that Lachowski is without Medicaid benefits presently.

"[B]ecause plaintiffs here seek declaratory and injunctive relief, they must establish an ongoing or future injury in fact." Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." Id. at 287-88 (quoting O'Shea v. Littleton, 414 U.S. 488, 495–96 (1974)). "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." Susan B. Anthony List v. Driehaus, 134 S.Ct. 2334, 2341 (2014) (quotations omitted).

"[W]hile it is true that threatened rather than actual injury can satisfy Article III standing requirements, not all threatened injuries constitute an injury-in-fact." Beck v. McDonald, 848 F.3d 262, 271 (4th Cir. 2017). "Rather . . . injury-in-fact must be concrete in both a qualitative and

---

[3] Plaintiffs do not specify in their complaint which of the four causes of action in the complaint are being asserted on behalf of Lachowski. Based upon the preceding discussion of claims, however, it appears that plaintiffs primarily seek to assert a claim for termination of Medicaid benefits without proper notice, in violation of the Medicaid Act and the Due Process Clause, on behalf of Lachowski. To the extent plaintiffs intend to assert an ADA or ACA claim on behalf of Lachowski, such claim is dismissed for failure to state a claim upon which relief can be granted, for the reasons discussed by the court in addressing such claims. The instant analysis of Lachowski's standing concerns her ability to bring the asserted claims under the Medicaid Act and the Due Process Clause.

temporal sense," and it must be "distinct and palpable, as opposed to merely abstract." <u>Id.</u> (quotations omitted). "Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes." <u>Id.</u> (quotations omitted).

Plaintiffs' allegations regarding Lachowski meet the injury in fact test. Accepting the facts alleged in the complaint as true, and drawing inferences in her favor, her injury is concrete, distinct, and imminent. First, there was actual injury in the past. There are "a significant number of cases in which the county DSSs have failed to timely complete the required annual redetermination of Medicaid eligibility." (Compl. ¶ 52). In such instances, "[a]bsent timely action by the county DSS, DHHS's eligibility computer system, NCFAST, is programmed to automatically terminate Medicaid eligibility at the end of the twelve-month authorization period regardless of whether the beneficiary is still eligible for Medicaid." (<u>Id.</u> ¶ 57). Lachowski is one such individual who had her eligibility automatically terminated for this reason on December 31, 2016. (<u>Id.</u> ¶ 120). She suffered actual injury at that time due to lack of notice and termination of her personal care services. (<u>Id.</u> ¶ 121).

Critically, at the time of the filing of complaint on December 6, 2017, the same injury was imminent due to a continuation of the same facts that led to Lachowski's past injury. In particular, according to the complaint, "Mecklenburg County DSS continues to fail to timely process large numbers of medicaid renewals," and "NCFAST programming has not changed." (<u>Id.</u> ¶ 127). In addition, as of that date, Lachowski "had received no renewal form or any other communication from DSS about renewing her Medicaid," and it "is already too late for DSS to request information from her" for renewal. (<u>Id.</u> 125-126). Thus, it is reasonable to infer that, as of the date of filing the complaint, an automatic termination of benefits on December 31, 2017, was imminent. Further, the

same injury in lack of notice and termination of personal care services is a concrete injury, further augmented this time by loss of supplemental care services. (Id. ¶ 128).

Defendant suggests that there are too many hypothetical steps in anticipating future injury by Lachowski. However, accepting as true allegations in the complaint, there are, in fact, few hypotheticals. Rather, based on the complaint, it is certain that: 1) Mecklenburg DSS is failing to process "large numbers" of renewals; 2) NCFAST is continuing to automatically terminate in such instances; 3) circumstances for Lachowski have not changed; and 4) Lachowski's injury upon automatic termination is concrete. The only contingency is whether Lachowski will be again one of the individuals for whom DSS fails to process a renewal. Drawing inferences in plaintiffs' favor, given that DSS is failing to process a "large number" and "significant number" of renewals, (id. ¶¶ 52, 127), there is a "substantial risk that the harm will occur." Susan B. Anthony List, 134 S.Ct. at 2341. Accordingly, plaintiffs have established standing based upon the allegations in the complaint.

In sum, plaintiffs have met their burden to show standing for Lachowski, and defendant's argument to the contrary is without merit. Therefore defendant's motion to dismiss Lachowski is denied, but such denial is without prejudice to raising the issue again upon a more complete record.

B.     Motion to Certify Class

1.     Standard of Review

"At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). Plaintiffs may represent a class only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "In addition, the class action must fall within one of the three categories enumerated in Rule 23(b)," EQT Prod. Co. v. Adair, 764 F.3d 347, 357 (4th Cir. 2014), one of which, as plaintiffs allege here, arises where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

"[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350-51 (2011) (quotations omitted). "[S]ometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," and the analysis "will entail some overlap with the merits of the plaintiff's underlying claim." Id. "[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Id. at 351.

Furthermore, a prerequisite to certification is that the "order that certifies a class action must define the class." Fed. R. Civ. P. 23(c)(1). "In order to determine whether the class action is proper, the district court must determine whether a class exists and if so what it includes[;] . . . the definition of the class is an essential prerequisite to maintaining a class action ." Roman v. ESB, Inc., 550 F.2d 1343, 1348 (4th Cir.1976). "The district court may . . . be able to craft more definite class definitions, thus eliminating or mitigating some of the problems" with proposed class definitions. EQT Prod., 764 F.3d at 369. Finally, "[e]ven after a certification order is entered, the judge remains

free to modify it in the light of subsequent developments in the litigation." <u>Gen. Tel. Co. of Sw. v. Falcon</u>, 457 U.S. 147, 160 (1982); <u>see</u> Fed. R. Civ. P. 23(c)(1)(C).

      2.     Analysis

         a.     Class Definition

At the outset, the court addresses plaintiffs' proposed class definition and modifies it to reflect the current status of plaintiffs' claims and other issues associated with the proposed classes. As noted in the introduction to this order, plaintiffs propose one overarching class definition, plus three subclasses. Subclass two and subclass three no longer are warranted in light of dismissal of plaintiffs' ADA and ACA claims.

This leaves one proposed overarching class definition, plus one proposed subclass:

[<u>Class</u>:] All individuals whose Medicaid coverage was, is, or will be interrupted or terminated, effective January 1, 2014 or later, by Defendant Secretary of the North Carolina Department of Health and Human Services [hereinafter "DHHS"], or any of her employees, contractors, agents, or assigns, without first making an individualized determination of ineligibility under all Medicaid eligibility categories.

<u>Subclass One</u>: All individuals whose Medicaid coverage was, is, or will be terminated or interrupted, effective January 1, 2014 or later, by Defendant Secretary of DHHS, or any of her employees, contractors, agents, or assigns, without first making an individualized determination of ineligibility under all Medicaid eligibility categories and without first sending the beneficiary at least 10-day prior written notice of the termination of Medicaid that describes the specific reasons for the termination, the specific regulation supporting the termination, and the right to a pre-termination hearing.

Given the specific factual allegations of the named plaintiffs and proposed class members, along with the evidence presented in conjunction with plaintiffs' motions, the court finds that a reconstruction of the class definition is warranted in the following respects.

Instead of a "class" and a "Subclass One," the court identifies and names herein two independent classes: "Class One" and "Class Two." The "Class One" definition appropriately is

narrowed from the originally proposed "class" definition to include now only the following, with modifications in bold type:

> **Class One:** All individuals **whose Medicaid coverage was or is based upon a non-disability category, and** whose Medicaid coverage was, is, or will be interrupted or terminated, effective January 1, 2014 or later, by Defendant Secretary of the North Carolina Department of Health and Human Services, or any of her employees, contractors, agents, or assigns, without first making an individualized determination of **continued Medicaid eligibility under a disability-based category.**

Plaintiffs' proposed class definition is too broad in that it covers circumstances that are not fairly encompassed within the specific factual allegations in the complaint and not commensurate with the current scope of injunction contemplated through preliminary injunction motion. While it is conceivable that there are other categories of eligibility that could be treated in the same respect as disability-based categories – as suggested in the abstract in the complaint paragraph 70 – plaintiffs have not alleged specific facts supporting claims or class definition on the basis of such additional categories.

Next, the former "subclass one" and now "Class Two" definition is redefined to include now only the following, with modifications in bold type:

> **Class Two:** All individuals **whose Medicaid coverage was or is based upon a disability category, and** whose Medicaid coverage was, is, or will be terminated or interrupted, effective January 1, **2016** or later, by Defendant Secretary of DHHS, or any of her employees, contractors, agents, or assigns, without first sending the beneficiary at least 10-day prior written notice of the termination of Medicaid that describes the specific reasons for the termination, the specific regulation supporting the termination, and the right to a pre-termination hearing.

This redefinition of "subclass one" into current "Class Two" isolates the alleged problem of terminations of Medicaid coverage without notice or opportunity for hearing, for dates and circumstances in which named plaintiff Lachowski is a representative member. The court has narrowed the class definition for present class certification purposes, to overcome problems of

commonality and typicality presented by the original definition, as discussed further below, and to ensure "named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." Wal-Mart, 564 U.S. at 349. The court also removes the now-redundant reference to "without first making an individualized determination of ineligibility under all Medicaid eligibility categories" covered by "Class One." Because this "Class Two" is independent of "Class One," the court dispenses with the "subclass" label as originally proposed by plaintiffs.

In sum, because the court does not accept plaintiffs' proposed class definitions, but rather constructs new class definitions based upon the present circumstances in the case, plaintiffs' motion for class certification is denied in part on the basis of class definition. The court proceeds next to examine the Rule 23(a) and (b) factors with respect to the two classes presently defined.

b. Class One

Class One, as presently defined, satisfies the numerosity, commonality, typicality, and adequacy of representation factors required by Rule 23.

With respect to numerosity, plaintiffs have demonstrated minimally that there are a sufficient number of individuals whose Medicaid coverage was or is based upon a non-disability category, and whose Medicaid benefits have terminated or will terminate without consideration of eligibility under a disability-based category, to warrant certification under the Class One definition. (See Compl. ¶¶ 67-68; Sea Decl. (DE 24) ¶¶ 11, 37-38). While the exact number of such individuals is not specified by plaintiffs, they have demonstrated numerosity by a combination of statistics on disability claims by county coupled with statistics on non-disability Medicaid terminations by county. (Id.). Given that the relief sought is injunctive in nature, and that defendant does not dispute the numerosity requirement with respect to this class, the court finds the numerosity

requirement met. <u>Doe v. Charleston Area Med. Ctr., Inc.</u>, 529 F.2d 638, 645 (4th Cir. 1975) ("Where the only relief sought for the class is injunctive and declaratory in nature, even speculative and conclusory representations as to the size of the class suffice as to the requirement of many.").

With respect to commonality and typicality, Class One as presently defined presents common issues of fact and law regarding requirements for DHHS to consider eligibility under a disability-based category prior to termination of Medicaid benefits, with plaintiffs Hawkins and Shipp representative of this class with members of the same type. Class One claims "depend upon a common contention," here that the Medicaid Act requires consideration of alleged disability before terminating Medicaid benefits, "that is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." <u>Wal-Mart</u>, 564 U.S. at 350.

Further supporting certification, the Class One definition contemplates a unified remedy common to all class members, as it is presently applied for purposes of plaintiffs' motion for preliminary injunctive relief. Where, as discussed further below, the court has narrowly tailored the award of preliminary injunctive relief for Class One members, the court finds that such narrowly tailored remedy and administration thereof further supports certification of Class One. In the event plaintiff proceeds forward with requesting additional relief, for reinstatement of solely past-terminated beneficiaries, not presently sought in preliminary injunction motion (<u>see</u> Pl's Mem. (DE 49) at 2 n.1), the court may then consider the propriety of dividing Class One into two subclasses, one for past terminations, and one for future terminations, in order to provide unified method of relief to members of each class. <u>Wal-Mart</u>, 564 U.S. at 350 ("The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted").

Finally, the court notes that no genuine issue is presented as to the element of adequacy of class representation for Class One. Named plaintiffs have demonstrated they will fairly and adequately represent the interests of all class members and have no conflict with the interests of the class as a whole, particularly where the relief sought is injunctive in nature only. As this court previously has noted, class counsel have significant experience in the areas of law at issue in this case and are qualified to serve as class counsel. See, e.g., L.S., 2012 WL 12911052 *8.

In sum, plaintiffs have demonstrated satisfaction of class certification factors for Class One as defined and applied herein.

c.     Class Two

Class Two, as presently defined, also satisfies the numerosity, commonality, typicality, and adequacy of representation factors required by Rule 23.

As an initial matter, there is no issue raised or presented by the record as to numerosity for Class Two as presently defined. Plaintiffs have demonstrated that there have been, and will be as of the filing of the complaint, a large number of terminations without notice, which satisfy the Class Two definition. (See Compl. ¶¶ 63, 64; Sea Decl. (DE 24) ¶¶ 13-26). Likewise, for the same reasons stated as to Class One, the court finds plaintiffs provide adequate class representation.

With respect to commonality and typicality, the court notes that there does not appear to be genuine dispute over the common substantive legal contention underlying the class, where the requirement of notice and opportunity for hearing before termination of benefits is well established. See, e.g., Goldberg, 397 U.S. at 261. Certain common factual issues regarding violations of this standard also are straightforward. As discussed above, plaintiff Lachowski was subjected to termination of her disability-based Medicaid benefits without notice, and as of the filing of the

complaint, imminently is at risk of termination without notice. She therefore is typical of the class, presenting with a common question of fact whether the subject individual was 1) receiving disability based Medicaid benefits, and 2) subjected to a termination without notice since January 1, 2016, or imminently is at risk of re-termination without notice. Other proposed class members, such as Leroy Rivers ("Rivers"), are similarly situated. (See Decl. of Cassidy Estes-Rogers (DE 40) Exs. 1-3).

The court recognizes that the present Class Two definition does not extend as broadly as plaintiffs originally proposed, where it is now limited to individuals "whose Medicaid coverage was or is based upon a disability category," rather than just "[a]ll individuals whose Medicaid coverage was, is, or will be terminated." (Pls' Mem. (DE 18) at 1). But, the originally proposed definition presented insurmountable problems with commonality and typicality, given that those receiving Medicaid benefits on the basis of disability are subject to recurring eligibility determinations, whereas other types of beneficiaries may not be. Including in a class together all individuals who had their Medicaid benefits terminated without notice since January 1, 2014, presents an impractical divergence of circumstances and available remedies. In particular, individuals who received Medicaid benefits solely based upon their age may have been terminated without notice in January, 2014, but there is no reasonable basis for them to expect a recurring issue of terminations, to have the same benefit arising from resending notice in 2018, or consideration of reinstatement. (See, e.g., Compl. ¶¶ 53, 58-59). If they happen to also allege disability, and would seek to have Medcaid benefits based instead on disability, they may properly fall within Class One. By contrast, individuals like plaintiff Lachowski and proposed member Rivers, who already received Medicaid benefits based upon their disability status, reasonably would expect a recurring issue of terminations, and will benefit in similar manner from a resent notice or consideration of reinstatement, and may

properly fall within Class Two. (See, e.g., Compl. ¶¶ 57, 127; Decl. of Cassidy Estes-Rogers (DE 40) Exs. 1-3)).

In addition, plaintiffs have produced specific evidence that, starting in early 2014, in response to a "backlog," defendant programmed NCFAST to extend eligibility for certain categories of beneficiaries, but not for other categories, such as "disabled Medicaid beneficiaries." (Pl's Mem. Prelim. Inj. (DE 49) at 7). Plaintiffs' own evidence thus suggests that defendant has handled recertifications of disabled Medicaid beneficiaries, such as plaintiff Lachowski, different from other types of Medicaid beneficiaries. To combine disabled Medicaid beneficiaries with other types of beneficiaries into Class Two likely would raise divergent issues of necessary steps for administrative relief and remedy for class members.

In these respects, the court's redefinition of Class Two addresses issues raised in opposition by defendant to the originally proposed class definition. In opposing class certification, defendant suggests for example that potential members of each of the classes may have had a change in circumstance that no longer requires the remedy sought, in that individuals who may have had Medicaid terminated in the past "had their Medicaid coverage reinstated; proven to actually be ineligible for Medicaid and never been reinstated; secured other coverage; or, no longer required Medicaid coverage through the North Carolina Medicaid Program by virtue of a change in circumstances such as death or moving to another state." (Def's Mem. (DE 36) at 9). By limiting Class Two to individuals, like plaintiff Lachowski, who receive Medicaid benefits based upon disability, the Class Two definition avoids the standing and remedy problems raised by defendant's hypothetical. See Wal-Mart, 564 U.S. at 360 ("The key to the (b)(2) class is the indivisible nature of the . . . remedy warranted."); .

In sum, the record supports certification of classes proposed by plaintiffs only to the extent of Class One and Class Two as defined herein:

**Class One:** All individuals whose Medicaid coverage was or is based upon a non-disability category, and whose Medicaid coverage was, is, or will be interrupted or terminated, effective January 1, 2014 or later, by Defendant Secretary of the North Carolina Department of Health and Human Services, or any of her employees, contractors, agents, or assigns, without first making an individualized determination of continued Medicaid eligibility under a disability-based category.

**Class Two:** All individuals whose Medicaid coverage was or is based upon a disability category, and whose Medicaid coverage was, is, or will be terminated or interrupted, effective January 1, 2016 or later, by Defendant Secretary of DHHS, or any of her employees, contractors, agents, or assigns, without first sending the beneficiary at least 10-day prior written notice of the termination of Medicaid that describes the specific reasons for the termination, the specific regulation supporting the termination, and the right to a pre-termination hearing.

Given the court's rulings herein and the continuation of proceedings for plaintiffs' first and fourth claims for relief, such ruling is without prejudice to plaintiff seeking certification of a further class of individuals not falling within Class One or Class Two, provided the requisite showing under the Rule 23 factors can be made.

In addition, within **30 days** of the date of this order, plaintiffs are DIRECTED to file a form of proposed notice and method of notice to class members for Class One and Class Two as defined herein. Defendant is DIRECTED to file a response thereto, within **15 days** of the filing of any proposed notice by plaintiffs. Thereupon the court will make such further ruling as is warranted to direct appropriate notice to the classes as herein defined. See Fed. R. Civ. P. 23(c)(2).

C.      Motion for Preliminary Injunction

1.      Standard of Review

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). In addition, "Rule 65(d) requires courts granting injunctions to describe in reasonable detail the act or acts restrained or required." Pashby v. Delia, 709 F.3d 307, 331 (4th Cir. 2013) (internal quotations omitted). Finally, Rule 65(c) requires the court to address the propriety of a bond and the amount thereof. See id.

2.    Analysis

As noted in the introduction to this order, plaintiff seeks a preliminary injunction encompassing only a subset of claims advanced and relief sought in the complaint. The court's analysis of class certification further limits the available scope of injunctive relief on behalf of prospective class members to the certified class definitions. As so limited, the court turns to application of the Winter factors and determination of the proper scope of injunction.

a.    Likelihood of Success

Defendant does not contest plaintiffs' likelihood of success on the merits of their Medicaid Act and due process claims, except for preserving arguments already addressed in conjunction with their motion to dismiss, which the court already has addressed. Nevertheless, where plaintiff maintains the burden to show a likelihood of success on the merits, the court independently evaluates the merits of plaintiffs' claims.

The Medicaid Act requires a state participating in Medicaid to "provide that all individuals wishing to make application for medical assistance under the [state's Medicaid] plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 1396a(a)(8). The state must make such medical assistance available to all individuals meeting enumerated criteria specified in the statute, such as criteria for

"income," "age," "pregnant women or children," blind, or disabled. 42 U.S.C. § 1396a(a)(10). They shall also "provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness." 42 U.S.C. § 1396a(a)(3). Regulations implementing these statutory provisions require that the state Medicaid agency must "[c]ontinue to furnish Medicaid regularly to all eligible individuals until they are found to be ineligible;" and must "consider all bases of eligibility" prior to making an ineligibility determination. 42 C.F.R. §§ 435.930(b), 435.916(f)(1).

Case law applying the due process clause also has confirmed requirements for notice and opportunity for hearing prior to discontinuation of benefits. When a public benefit such as provision of medical care to the poor "is discontinued, only a pre-termination evidentiary hearing provides the recipient with procedural due process." Goldberg, 397 U.S. at 264. "[T]ermination of aid pending resolution of a controversy over eligibility may deprive an eligible recipient of the very means by which to live while he waits." Id. Such recipients must also be given "timely and adequate notice detailing the reasons for a proposed termination." Id. at 267; see also Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950) (requiring "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").

The core legal contentions underlying plaintiffs' remaining claims, advanced on behalf of plaintiffs and similarly situated class members as defined herein, are clearly supported by the aforementioned law. These core legal contentions include the proposition that defendant must continue to furnish Medicaid regularly to all eligible individuals until they are found to be ineligible, and must consider all bases of eligibility prior to making an ineligibility determination, thus

supporting claims of Class One as defined herein. In addition, the Medicaid Act and due process caselaw supports the proposition that defendant may not lawfully terminate Medicaid benefits of a Medicaid recipient without giving prior notice and opportunity for a hearing to such beneficiary, thus supporting claims of Class Two as defined herein.

The court notes, however, that certain aspects of the outer contours of plaintiffs' claims are not so clear in their ultimate likelihood of success on the merits, particularly in terms of plaintiffs' ability obtain from this court an order for injunctive relief dictating the precise methods plaintiff seeks to have defendant carry out its statutory and constitutional responsibilities.

For example, while plaintiffs have established a clear violation of law in defendant's failure to provide notice to plaintiff Lachowski prior to terminating her Medicaid benefits, plaintiffs have not clearly established that the correct method for redressing this violation and preventing future violations for Class Two is to cease use of the current programming of the NCFAST computer system, as plaintiffs requests, so that it does not automatically terminate Medicaid benefits to individuals such as Lachowski. (See Pl's Reply (DE 53) at 6). Rather, under the circumstances presented, there may be other methods more narrowly tailored and balanced against competing public interests (more of which will be discussed with factors further below) to achieve the same result of proper notice.

Similarly, while defendant does not dispute that it must "consider" all eligibility criteria, such as disability, before terminating Medicaid benefits, (e.g., Def's Resp. (DE 51) at 11), plaintiffs have not clearly established that defendant must extend Medicaid benefits automatically in every instance in which a Medicaid beneficiary alleges a disability, without more from the applicant. Specifically, plaintiff has cited to no binding Fourth Circuit case clearly authorizing the court to

command defendant and her agents within the state and county DSS agencies to themselves completely adjudicate an application for disability-based Medicaid benefits with evidentiary hearing in every case on the issue of disability prior to terminating Medicaid benefits previously received on non-disability basis. While the law may require defendant to offer a hearing on the issue of the termination decision itself, or the law may require defendant to accept documentation in furtherance of an application for disability-based Medicaid benefits, plaintiffs have not demonstrated that the law is clearly established to the full extent advanced in their claim.

An illustrative example is plaintiffs' reliance upon an unpublished district court case, among other out-of-circuit authority, in which a court awarded injunctive relief largely, but not entirely, along the lines plaintiffs presently seek in this case. In a case with remarkably similar circumstances, the court in <u>Crawley v. Ahmed</u>, No. 08-14040, 2009 WL 1384147, at *30 (E.D. Mich. May 14, 2009), preliminarily enjoined defendant state Medicaid administrators as follows:

> (B) Defendants are preliminarily enjoined from failing to continue Medicaid to each of the Named Plaintiffs and similarly situated class members, unless and until they have reviewed and ruled out the Plaintiff's eligibility for Medicaid under all eligibility categories, including disability related categories, and specifically require that before terminating Medicaid eligibility the Defendants must:

> (1) Conduct an individual ex parte review of each Named Plaintiff's, and similarly situated class member's DHS case file and information available electronically from the Social Security Administration to determine whether there is information indicating that they have a medical condition or disability that prevents them from working—including information that they are applying for or pursuing SSI or Social Security disability benefits,

> (2) If their continued eligibility is not verified by the ex parte review, identify and request additional information that may be needed to evaluate eligibility under other Medicaid categories, including disability-based categories, and then,

> (3) Take action to initiate termination of the individual's Medicaid only if the individual has not cooperated in responding to Defendants' request to the individual for additional information within a reasonable time, or if the information available

to Defendants following their efforts to obtain all necessary information establishes
that the Named Plaintiff or class member is not eligible for Medicaid under any of
the Michigan Medicaid eligibility categories, including disability based categories.

The court additionally required issuance of notice and opportunity to be heard prior to termination.

Id. at *30-31. Crowley is a useful example for the present analysis in two main respects. First, it

illustrates some of the legal issues that reasonably must be surmounted before establishing a

successful claim of this nature, for which the Crowley court turned in part to Sixth Circuit law for

resolution. See, e.g., id. at *21 (citing Crippen v. Kheder, 741 F.2d 102, 106-07 (6th Cir. 1984)).

Plaintiffs have not cited any comparable Fourth Circuit law on point.

Second, Crowley illustrates that, even in this one cited instance where injunctive relief was

granted under similar circumstances, the court did not provide relief to the full extent plaintiffs now

seek. Notably missing from the injunctive relief order in Crowley, or at least left imprecise, is any

requirement that the defendant state agency must provide an evidentiary hearing on the issue of

disability prior to termination of Medicaid benefits. Rather, the injunctive relief order requires the

state agency to review available documentation, and to gather documentation from the individual,

and then initiate termination "if the information available to Defendants following their efforts to

obtain all necessary information establishes that the [individual] is not eligible for Medicaid under

any of the . . . categories, including disability based categories." Id. at *30. While the injunctive

relief order also requires issuance of a notice with "explanation of their right to a pre-termination

hearing," it does not precisely specify the scope or subject matters that must be covered in such

hearing.

In sum, not every aspect of the requested relief is clearly established in the law, particularly

plaintiffs' requests for the court to direct that: 1) "automatic Medicaid terminations by Defendant's

37

computer NC FAST must be stopped" or to: 2) "provide the right to a de novo pre-termination hearing, including on the issue of disability," without qualification. (Pl's Reply (DE 53) at 6). Apart from these caveats, however, plaintiffs have established a likelihood of success on the merits of the core aspects of their claims.

        b.      Irreparable Harm

Plaintiffs have established they are likely to suffer irreparable harm in the absence of preliminary relief, because of the unlawful termination of benefits without prior notice and opportunity for hearing; and because of unlawful termination of benefits without consideration of disability based categories. Defendant does not contest irreparable harm, and the Fourth Circuit has recognized irreparable harm in analogous circumstances. "[B]eneficiaries of public assistance may demonstrate a risk of irreparable injury by showing that enforcement of a proposed rule may deny them needed medical care." Pashby, 709 F.3d at 329.

        c.      Public Interest

Plaintiffs have established that the public interest favors an injunction commensurate with the limitations on the likelihood of success of merit on the claims, and class definitions found herein. Defendant again does not contest this factor in particular. "[T]he district court could find that the likelihood of success on the merits satisfied the public interest prong only if other considerations did not meaningfully weigh on that factor." Pashby, 709 F.3d at 330. In present circumstances, where the parties do not raise other issues calling into question the public interest in entering an injunction to enforce the Medicaid Act and the due process clause, the court finds that this factor has been satisfied.

        d.      Balance of Equities

Defendant bases her opposition to preliminary injunction on the balance of equities factor. However, for the reasons stated below, none of the arguments raised, individually or as a whole, counsel in favor of denying in its entirety the motion for preliminary injunction. Rather, considered against plaintiffs' arguments in favor of injunction, defendant's arguments counsel in favor of allowing the injunction at this juncture only to the extent set forth herein.

First, defendant contends that because named plaintiffs "are all now eligible for and receiving some form of Medicaid coverage, . . .the injunctive relief requested by the Plaintiffs is not necessary." (Def's Resp. (DE 51) at 8-9). To the extent this assertion is accurate, however, the injunction as determined herein still is necessary because it is designed to prevent termination of existing Medicaid coverage without adequate notice and without consideration of disability-related categories. Plaintiffs also confirm in their motion that they "reserve for trial their request to reinstate those who have been illegally terminated since January 2014." (Pl's Mot. (DE 37) at 1 n. 1). Therefore, reinstatement is not at issue in consideration of the instant motion.

Next, defendant asserts with respect to Class Two claims that the factual premise of the motion for preliminary injunction is flawed, suggesting that there are, in fact, few terminations made without notice, where counties are working to provide notice manually. (Def's Resp. (DE 51) at 10). Defendant asserts that she "has a system in place wherein the county DSS offices are responsible for processing the recertifications and determining Medicaid eligibility in a timely manner." (Id.). As an initial matter, defendant's suggestion that county DSSs have backlogs entirely under control is belied by the reports submitted by plaintiffs and the evidence of terminations without notice of prospective class members. (See, e.g., Sea Decl. Exs. 3-4, 14; Allison Decl. (DE 39) Exs. 6-7, Estes Rogers Decl. Exs. 1-2). In any event, accepting defendant's assertion currently is accurate as

supported by the sworn affidavit of Carolyn McClanahan ("McClanahan"), submitted with defendant's response, (DE 51-2), then the portion of the injunction as determined herein regarding provision of notice before terminations should not be difficult to comply with, thus supporting a balance of equities in favor of plaintiffs.

At the opposite end of the spectrum, plaintiffs' proposal that "automatic Medicaid terminations by Defendant's computer NC FAST must be stopped" is overbroad and not necessary to achieve purposes of the injunctive relief sought. Where the issue with Class Two members, such as plaintiff Lachowski, is termination or interruption of disability-based Medicaid coverage without timely notice and opportunity for hearing, then a more appropriately tailored remedy under the circumstances is to include a mechanism ensuring that individual county DSSs that are behind in re-eligibility processing must manually override automatic Medicaid terminations, or manually send requisite notice before the automatic Medicaid terminations take place. As noted, defendant has asserted already that it has met or is prepared to meet this standard. (See McClanahan Aff. ¶¶ 10, 11, 13, 15). In such circumstances, the balance of the equities favors requiring defendant to ensure compliance with notice requirements in a narrowly tailored manner, before resorting to the blunt solution plaintiffs propose.

Turning next to injunctive relief related to Class One members, such as plaintiffs Shipp and Hawkins, defendant argues at one point that "[i]f Hawkins', Shipp's or any similarly situated Medicaid beneficiary's full Medicaid coverage is automatically extended while a disability determination is made, that will put the State in the position of providing full Medicaid coverage to individuals who are clearly not eligible. This is contrary to the law that Defendant is charged with administering." (Def's Resp. (DE 51) at 11) (emphasis added). This argument is flawed in two

significant respects. First, it suggests that all individuals who simply allege disability "are clearly not eligible," which is a surprising assumption to make given that obviously some individuals who allege disability in fact are eligible, and the Medicaid Act charges the state with making that very determination. See 42 U.S.C. § 1396a(a)(8) & (a)(10). Second, defendant does not offer any legal citation in support for her argument – indeed she cites no statute, regulation, or case law whatsoever in the argument section of her brief on balancing the equities.

Defendant also suggests that count DSS offices are, in fact, already considering eligibility under other Medicaid categories, such as disability, prior to termination of Medicaid benefits. In this manner, defendant appears to concede the legal proposition that "consideration" of eligibility under such categories is required; however, defendant suggests that she satisfies this standard by "refer[ing] the matter to [Disability Determination Services] for a disability determination" in any case in which an individual alleges a disability upon notice of termination of Medicaid benefits. (Def's Resp. (DE 51) at 11). Defendant's suggestion highlights the crux of the dispute between the parties at this juncture, and it illustrates the point at which plaintiffs' claim crosses the line from clearly successful to one about which reasonable jurists could differ. On this issue, the court informed by its prior determination above that there are significant questions going to the merits of the outer contours of plaintiffs' claims, particularly on the specific nature of the full relief sought.

In particular, considering the arguments advanced by plaintiffs in favor of full injunctive relief sought and by defendant in favor of no injunctive relief, the court determines that the balance of the equities at this preliminary juncture favors a middle ground. On the one hand, defendant's current stated practice of simply proceeding directly to termination of non-disability Medicaid benefits without providing some mechanism for building in time for processing of a disability-based

Medicaid benefits request, (see id.), likely is inadequate to meet the requirements of the Medicaid statute. On the other hand, plaintiffs' suggestion that defendant must immediately suspend every non-disability Medicaid benefit termination when an individual alleges disability, without more, and to provide a de novo hearing on the issue of disability before termination of non-disability based Medicaid benefits, (see Pl's Reply (DE 53) at 6), likely exceeds the requirements of the Medicaid statute and due process. Indeed a requirement for cross-the-board suspension of terminations based on nothing more than an allegation of disability, without more, could invite abuse of the benefits system.

Accordingly, the court must carefully consider the wording and scope of injunctive relief ordered so that it is tailored to address only those aspects of plaintiffs' claims, where plaintiffs have demonstrated a likelihood of success on the merits. See Pashby, 709 F.3d at 331.

e.      Scope

In light of the foregoing, the court sets forth the following scope of injunctive relief as warranted based upon the Winter factors. Preliminary injunctive relief here appropriately is specified in two parts, with the first part relating to Class One as presently defined and the claims it implicates, and the second part relating to Class Two as presently defined and the claims it implicates. In addition, as discussed further below, the court articulates separately the purpose of the injunctive relief and the mechanism for achieving such purpose, to facilitate the process specified below for possible modification based upon practical administrative considerations.


**Class One Preliminary Injunction**

<u>Purpose</u>: The purpose of the instant Class One preliminary injunction is to ensure that, before an individual's Medicaid benefits under a non-disability based category terminates, defendant considers such individual's eligibility for coverage under a disability-based Medicaid category, where such consideration includes providing the individual an opportunity to allege and apply for disability-based coverage sufficiently in advance of termination to allow time for processing of the application, along with a mechanism for suspending termination of Medicaid benefits, if necessary, for a reasonable period of time while a timely application is pending.

<u>Preliminary Injunction</u>: Defendant and her employees, contractors, agents, or assigns, are preliminarily enjoined from terminating existing Medicaid benefits for individuals whose Medicaid coverage is based upon a non-disability category, unless and until they have considered such individuals' eligibility for Medicaid benefits under disability-related categories; in particular, before terminating Medicaid benefits, defendant and her employees, contractors, agents, or assigns, must:

    i.    Provide written notice to any such individual either 1) 180 days in advance of termination for all individuals whose scheduled termination date can be ascertained that far in advance (e.g., in circumstances in which termination is based upon fixed and predictable factors such as age); or, 2) in all other instances, 60 days in advance of termination;

    ii.    Such notice must state the specific reasons for the termination, the specific regulation supporting the termination, and the opportunity

for a pre-termination hearing regarding the reasons for the termination.

iii.    In addition, such notice must state that if an individual seeks to assert continued eligibility for Medicaid benefits under another category, such as disability, the individual must so specify by return of the notice(e.g., through a check box or fill in the blank), within 15 days of receipt thereof, or to provide notice in person during the same time period to the individual's county DSS office or caseworker.

iv.    If defendant or her employees, contractors, agents, or assigns, receives such timely allegation of disability, either through written notice or otherwise, defendant must provide instructions to such individual to submit an application for disability-based Medicaid coverage within 45 days, and to suspend termination of existing Medicaid coverage pending initial agency review of any such timely received application.

v.    Defendant or her employees, contractors, agents, or assigns, must also provide an extension of the suspension of termination beyond that first level of agency review, upon individualized determination of exceptional circumstances requiring extension.

**Class Two Preliminary Injunction**

44

<u>Purpose</u>: The purpose of the instant Class Two preliminary injunction is to ensure that an individual's Medicaid benefits under a disability-based category does not terminate automatically upon periodic re-eligibility determination without prior notice to the individual.

<u>Preliminary Injunction</u>: Defendant and her employees, contractors, agents, or assigns, are preliminarily enjoined from terminating existing Medicaid benefits for individuals whose Medicaid coverage is based upon a disability category, unless and until they have received 10-day prior written notice of the termination that describes the specific reasons for the termination, the specific regulation supporting the termination, and the opportunity for a pre-termination hearing regarding the reasons for the termination. In particular, In those instances where individual county DSS offices are behind schedule in processing Medicaid re-eligibility determinations, defendant must instruct her employees, contractors, agents, or assigns to either 1) manually override the automatic termination of benefits occurring in such instances because of the NC FAST system, or 2) manually provide 10-day prior written notice of the termination in such instances to affected individuals.

> f.     Timing of Injunction

Because the injunction determined by the court is not based upon specific language requested by either party, and it implicates a variety of administrative considerations, the details of which have not been briefed by the parties, the court STAYS implementation of the injunction for **60 days** from the date of this order. During that time, within **30 days** of the date of this order, both parties may, but are not required to, file an alternative proposal for accomplishing the purpose of the injunctive

relief as set forth herein.  Within **15 days** of such submission(s), if any, a party may file a response to the other party's proposal, if any.  Thereupon the court will make such further ruling as is warranted to implement or modify its injunction order.

       g.     Security

With respect to provision of security, where plaintiffs and class members are indigent public assistance recipients, and where the preliminary relief requested does not require any reinstatement of benefits, the court waives the requirement of a bond in this instance. See Pashby, 709 F.3d at 332.

D.    Case Scheduling

After the pleadings have been framed, the court will enter such further order as is warranted regarding case planning and scheduling. See Fed. R. Civ. P. 12(a)(4)(A); 16(b).

## CONCLUSION

Based on the foregoing, plaintiffs' motion to certify class (DE 17), defendant's motion to dismiss (DE 32),  and plaintiffs' motion for preliminary injunction (DE 37), are each GRANTED IN PART and DENIED IN PART, all as set forth in further detail herein. The parties and the clerk are DIRECTED to refer to the text of the order for specific directions and deadlines in bold regarding class certification and preliminary injunction as set forth herein.

SO ORDERED, this the 9th day of August, 2018.

_____
LOUISE W. FLANAGAN
United States District Judge