# SETTLEMENT AGREEMENT

NOW COME Alicia Franklin and Reina Guzman, on behalf of themselves and members of the certified class, ("Plaintiffs") and Kody Kinsley, in his official capacity as the Secretary of the North Carolina Department of Health and Human Services ("Department" or "Defendant") (collectively referred to hereinafter as "the parties") and enter in the following Settlement Agreement ("Agreement").

# RECITALS

**WHEREAS**, on November 21, 2017, Plaintiffs filed this lawsuit (Case No.: 5:17-CV-581) in the United States District Court for the Eastern District of North Carolina ("the Court");

**WHEREAS**, Plaintiffs sought declaratory and injunctive relief against Defendant for alleged violations the Social Security Act and the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and an injunction to prevent terminations of Medicaid coverage and to prohibit Defendant from terminating Medicaid without reviewing Medicaid eligibility under all categories and providing timely and adequate notice of same;

**WHEREAS**, the parties seek to resolve their statutory and constitutional claims and have entered into this agreement to do so;

**WHEREAS**, Plaintiffs filed motions for class certification and a preliminary injunction on February 13, 2018;

**WHEREAS**, on August 9, 2018, the District Court entered an order granting Plaintiffs' motions for a preliminary injunction and class certification;

**WHEREAS**, on December 10, 2018, the Court entered an order modifying its August 9 Order;

**WHEREAS**, the parties jointly filed a series of motions to delay the Rule 26(f) conference and discovery to permit time for implementation and monitoring of the preliminary injunction and for settlement discussions, which were granted by the Court;

**WHEREAS**, the parties worked diligently and cooperatively for many hours over many months to notify the class and implement the Court's preliminary injunction, including but not limited to making multiple changes to computer programming to prevent automatic Medicaid terminations, significantly improving the content of notices issued when Medicaid is terminated or reduced, making substantial changes to manual instructions to county DSS's and forms that are used in Medicaid redeterminations, and negotiating the terms of this Agreement;

**WHEREAS**, the parties recognize that this case involves legal issues that may take a prolonged time to fully litigate and resolve and further recognize that continued litigation would be an expensive, lengthy, and time-consuming matter;

1

**WHEREAS**, the parties agree that neither entering into this Agreement nor the terms of this agreement shall be deemed as an admission by any of the parties to this Agreement;

**WHEREAS**, nothing in this Agreement shall be construed as an acknowledgment, an admission, or evidence of liability of Defendant under the Constitution or any federal or state law, and this Agreement may not be used as evidence of liability in any other civil or criminal proceeding;

**WHEREAS**, this Agreement does not serve as an admission by Defendant that corrective measures are necessary to meet the requirements of the Medicaid Act or the Constitution or that Defendant is not currently complying with same;

**WHEREAS**, the parties share a mutual interest in seeing that Medicaid eligibility determinations are conducted consistent with Federal law; and

**WHEREAS**, the parties wish to enter into a Settlement Agreement as is fully set forth herein;

**NOW THEREFORE**, the parties have decided to resolve this matter in the manner set forth below.

## AGREEMENT

**I.  Scope of Agreement:** This Settlement Agreement shall apply solely to the matters at issue in this lawsuit, i.e., N.C. Medicaid eligibility redeterminations and adverse actions to terminate or reduce Medicaid coverage. Except as otherwise specified herein, this Agreement will take effect and become enforceable 60 days after Court approval of this Agreement. Exhibits A through M attached to this Agreement are incorporated by reference and are therefore part of its terms.

**II.  Definitions:**

   A.   "Defendant" as used herein refers to the named Defendant in his official capacity, and his successors in office, as well as his employees, contractors, and agents, including county Departments of Social Services.

   B.   "Medicaid" as used herein refers to the N.C. Medical Assistance Program under Title XIX of the Social Security Act.

   C.   "Beneficiary" as used herein refers to any individual receiving Medicaid coverage in North Carolina.

   D.   "DSS" as used herein means any and all of the 100 N.C. County Departments of Social Services or any other agent, employee, or contractor of Defendant performing Medicaid eligibility redeterminations.

E. "Medicaid eligibility redetermination" as used herein refers to the process of determining whether a Medicaid beneficiary remains eligible for Medicaid, which is required at least annually and whenever there is a change in circumstance affecting Medicaid eligibility.

F. "NC FAST" as used herein refers to Defendant's computer system used by Defendant and DSSs in Medicaid eligibility determinations.

G. "Medicaid certification period" as used herein refers to the period of time for which Medicaid has been approved, of twelve months or less, at the end of which time Medicaid coverage will end in NC FAST unless an eligibility redetermination has been completed or the certification period has been extended. This includes situations where the beneficiary's certification period is scheduled to end in NC FAST at the end of the month because the beneficiary or the beneficiary's child will turn age 18, 19, or 21 during that month.

H. "Terminating or reducing Medicaid" as used herein refers to any action by Defendant or DSS to stop Medicaid coverage for a beneficiary, or to change the eligibility category of Medicaid coverage to one providing less coverage, or to require an authorized beneficiary to meet a deductible before again having Medicaid coverage.

I. "Adequate timely notice" as used herein refers to the written notice required to be mailed to beneficiaries prior to termination or reduction of Medicaid, including the requirement for ten days advance notice in most cases as well as the requirements as to the content of the notice under 42 C.F.R. § 431.200, Subpart E.

J. "NC TRACKS" as used herein refers to Defendant's system under which health care providers can access Medicaid eligibility and other information for beneficiaries not enrolled in managed care plans.

K. "Implement" or "implementation" as used herein means adopting and distributing written policy, changing procedures, amending contracts as necessary, training staff, monitoring, and taking corrective action as necessary to assure compliance with this Agreement.

L. The determination of "Substantial compliance" or "Substantial noncompliance" with the requirements contained in Section III of this Agreement shall be made based on a careful weighing of the following factors, with no single factor, alone, sufficient to support a finding of substantial noncompliance: a) has the party made a strong and sustained effort to fully comply with the requirement; b) has the requirement's purpose or objective been complied with even though its formal language is not met; c) does the identified deficiency cause more than minimal harm or risk of harm to members of the plaintiff class, d) is the degree of

3

noncompliance with the requirement great enough to constitute a marked deviation from the terms of the requirement; e) is the noncompliance a temporary failure during a period of otherwise sustained compliance with the provision; f) is there full compliance with a substantial majority of the agreement's requirements taken as a whole; g) is the noncompliance by a small number of county DSSs that Defendant has taken steps to promptly and substantially correct?

M. "Plaintiffs" or "class members" as used herein refers to the named plaintiffs in this lawsuit and all members of the certified class, as defined in the court's December 10, 2018 Order.

N. "Class counsel" as used herein refers to the attorneys representing the named Plaintiffs and class members.

## III. Requirements:

A. Defendant will take all reasonable steps to assure that Medicaid coverage is not terminated or reduced, unless and until DSS has considered the beneficiary's eligibility for Medicaid benefits under all Medicaid eligibility categories, including disability-related categories.

B. Before terminating or reducing Medicaid benefits received in a non-disability category, Defendant must:

1. Provide written notice to the beneficiary either 1) 180 days in advance of termination for all beneficiaries whose scheduled termination date can be ascertained that far in advance (e.g., in circumstances in which termination is based upon fixed and predictable factors such as age or expiration of a 12-month or 6-month Medicaid certification period); or, 2) in all other instances, at least 60 days in advance of termination.

2. Such notice must state the date that the current authorization for Medicaid is scheduled to end. Such notice must state that if an individual seeks to assert continued eligibility for Medicaid benefits under a disability-related category, the individual must so specify the alleged disability by return of the notice (e.g., through a check box or fill in the blank) within 30 days of receipt thereof, or provide notice of same in person or by telephone during the same time period to the individual's county DSS caseworker.

3. If Defendant or DSS receives such timely allegation of disability, either through written notice or otherwise, Defendant must provide instructions to such individual to submit an application for disability-based Medicaid coverage within 30 days and must suspend termination of existing Medicaid coverage pending an initial agency decision on such timely received application.

4

4. Defendant will take all reasonable steps to assure that DSS workers don't refuse to accept, discourage, or deny Medicaid applications based on alleged disability because the applicant already receives Medicaid in another category.

5. If the beneficiary's timely submitted application for Medicaid coverage based on disability is approved or if the individual is determined to be still eligible for Medicaid on a basis other than disability, Defendant must continue Medicaid coverage without interruption.

6. If the disability-based Medicaid application is denied or is not timely submitted and the individual is not found eligible on a basis other than disability, Defendant shall send timely written notice of the termination of Medicaid, including the specific reasons for the termination, the specific regulation supporting the termination and the opportunity for a pre-termination hearing, in accordance with Federal law, regulation, and regulatory guidance.

C. Defendant will take all necessary steps to assure, whenever a Medicaid eligibility redetermination under all categories cannot be completed in time to provide adequate timely notice before a Medicaid certification period expires, that Medicaid coverage is extended until such a redetermination is completed and timely, adequate notice is sent. In particular, Defendant must maintain its programming of its eligibility computer system NC FAST, adopted in response to this litigation, to assure that Medicaid is extended one month past the end of the certification period whenever DSS fails to take the necessary action to process the recertification and give timely adequate notice. This programming may not be modified without consent of parties or permission of the Court, unless required by Federal law, regulation, or regulatory guidance. This provision shall not apply to system requirements that will not materially impact beneficiaries' rights. Defendant will also take all reasonable steps to assure that DSS staff do not manually override these extensions where a full eligibility redetermination and adequate timely notice have not occurred as required herein.

D. Defendant will take all reasonable steps to assure that before Medicaid is terminated or reduced, the beneficiary is mailed adequate timely written notice of the termination that describes the specific reasons for the termination or reduction, the specific regulation supporting the termination, and the opportunity for hearing to contact the adverse action. The timing of such notices shall comply with 42 C.F.R. §§ 431.211, 431.213, and 431.214. The contents of such notices shall comply with 42 C.F.R. §§ 431.210 and 435.917. The options for format and content of these notices as agreed upon by the parties are set out in the attached **Exhibits A and B**. Some content changes to the notices, as detailed in attached **Exhibit C**, will be

delayed but must be implemented no later than 180 days prior to final dismissal. The content of these notices will not be modified without the agreement of the parties or permission of the Court.

E. Defendant will take all reasonable steps to assure compliance with 42 C.F.R. §§ 435.907(e), 435.908 and 435.916 before Medicaid is terminated or reduced.

F. By no later than 90 days prior to final dismissal, Defendant will take all necessary steps to permit beneficiaries to complete the Medicaid redetermination online as required by 42 C.F.R. §§ 435.916 and 907(a). The formatting and content of the online renewal process shall comply with all applicable federal Medicaid regulations and be based on agreement of the parties or approval of the Court.

G. Defendant will take all reasonable steps, including but not limited to full use of the audit and corrective action process set out in N.C.G.S. §§ 108A-70.46 through 70.50, to assure that all DSSs provide reasonable access by telephone to permit beneficiaries to contact DSS when needed during the redetermination process or to report changes in circumstance at any time, including but not limited to avoiding busy signals by rolling over calls to another staff member or to an option to leave a message, providing the ability to leave a message after work hours and on weekends, limiting hold times to a reasonable length of time, permitting beneficiaries leave a detailed message instead of remaining on hold, avoiding hang ups and messages that no one can take the call with no option to leave a detailed message, and returning phone messages within a reasonable time.

H. Defendant will update the NCFAST-20020 Medical Assistance Renewal Notice no later 90 days prior to final dismissal. The formatting and content of this form shall comply with all applicable federal Medicaid regulations and be based on agreement of the parties or, if agreement cannot be reached, approval of the Court.

I. Defendant will take all reasonable steps, including but not limited to full use of the audit and corrective action process set out in N.C.G.S. §§ 108A-70.46 through 70.50, to assure that the Medicaid manual sections and forms to be used during the redetermination process, attached hereto as **Exhibit D and E,** are complied with by DSS. These instructions and forms may not be materially modified unless required by change in federal law, regulation, or regulatory guidance without consent of the parties or permission of the Court.

J. Defendant will take all reasonable steps, including but not limited to full use of the audit and corrective action process set out in N.C.G.S. §§ 108A-70.46 through 70.50, to assure that all Medicaid applicants and beneficiaries are informed, in a manner that they can reasonably be expected to understand, on at least an annual basis, of how to set up an account on the State's secure web-based Electronic Pre-Assessment Screening Service ("ePASS") that allows them to

receive notices, report changes, upload documents, request assistance and contact their DSS worker electronically as required by 42 C.F.R. §§ 435.916 and 435.907. Defendant will also take all reasonable steps to assure that all applicants and beneficiaries are offered and, if requested, provided assistance in setting up and enhancing the account and in using ePASS, including establishing alternative means of doing so for parents without a Social Security Number.

K. Defendant will take all reasonable steps, including but not limited to full use of the audit and corrective action process set out in N.C.G.S. §§ 108A-70.46 through 70.50, to assure that county DSSs update NC FAST within seven business days of a beneficiary's report of a change in circumstances, including but not limited to change in address, phone number, or language preference, and to assure that all requests for DSS assistance or for an accommodation or extension of time are documented in the case record.

L. Defendant will continue to take all reasonable steps to assure that Medicaid coverage does not effectively terminate without notice because data from NC FAST is not properly transferred to NC TRACKS due to failure of DSS to timely process a Medicaid eligibility redetermination.

M. Defendant will take all reasonable steps to assure that mandatory training of all DSS staff conducting Medicaid redeterminations will occur prior to the beginning of any Medicaid redetermination occurring after the end of the federal public health emergency. This training will cover the requirements of this Agreement and related changes to notices, manuals, forms, and NC FAST. Plaintiffs' counsel will be provided a copy of the training materials before the training occurs and will be permitted to attend the training. New DSS staff added or reassigned after this training will be required to watch a recording of this training before working on Medicaid redeterminations.

N. Defendant will take all reasonable steps, including but not limited to full use of the audit and corrective action process set out in N.C.G.S. §§ 108A-70.46 through 70.50, to assure that this Agreement is substantially complied with by all 100 county DSSs and by any other employees, agents or contractors performing Medicaid eligibility redeterminations for Defendant. Defendant will assure that any known, material noncompliance with this Agreement by such agent is promptly corrected. Defendant remains ultimately responsible as the single state Medicaid agency for assuring statewide substantial compliance with this Agreement.

O. Defendant will take all reasonable steps to assure that when a county DSS is in substantial noncompliance with one or more provisions of this agreement, the DSS will cease terminating or reducing Medicaid benefits until the noncompliance is substantially cured.

P.  The document attached as **Exhibit F** about their rights under this Agreement and how to reach class counsel will be sent by Defendant to Medicaid beneficiaries over the twelve-month period following Court approval of this Agreement by including the document with the mailing of the form entitled "DHB-5085 Important Information about Your Rights and Responsibilities for Medicaid During Recertification" during the redetermination process.

Q.  Defendant will provide all information reasonably requested by class counsel to allow class counsel to monitor compliance with this Agreement, including but not limited to, for each county, a quarterly randomly selected sample of a) Medicaid termination and reduction notices to beneficiaries; b) written DSS requests for information from the beneficiary during Medicaid eligibility redeterminations in cases resulting in a reduction or termination of Medicaid; and c) prepopulated MAGI renewal forms in cases resulting in a reduction or termination of Medicaid. The size of these samples shall be 2 of each for Level I counties, 5 of each for Level II counties, and 8 of each for Level III counties as set out in the attached **Exhibit G**. Upon request, Defendant will also provide to class counsel copies of the DSS and NC FAST eligibility files associated with documents in these samples. The protective order attached as **Exhibit L** will be entered at the time of Court approval of this Agreement so that records need not be redacted.

R.  Defendant will continue providing to class counsel monthly reports showing the timeliness of Medicaid redeterminations in each of the 100 counties. Defendant will also provide to class counsel monthly reports showing the number of Medicaid terminations/reductions, broken down by reason code and by county.

## IV. Court Approval:

A.  This Settlement Agreement is contingent and expressly conditioned upon the Court's approval of this Agreement by entering an Order of Approval. In entering into this Agreement, the parties are aware that, pursuant to Rule 23(e), Fed. R. Civ. P., and Local Rule 17.1 of the Eastern District of North Carolina, the Court must approve the terms of this Agreement and make certain findings in support of its approval. The Parties agree to promptly file this Agreement with the Court, together with:

   1.  Joint Motion and Attached Supporting Memorandum of Law for Preliminary Approval of Settlement Agreement, Notice to Class Members, Scheduling of Fairness Hearing, and Final Approval of Settlement Agreement (**Exhibit H**);

8

Case 5:17-cv-00581-FL    Document 124-1    Filed 10/18/22    Page 8 of 14

2. [proposed] Order Preliminarily Approving Proposed Settlement Agreement and Directing Notice to the Class (**Exhibit I**);

3. [proposed] Notice to Class Members of Settlement and Publication Plan (**Exhibit J**);

5. [proposed] Order of Approval of Settlement (**Exhibit K**);

7. Joint Motion and [proposed] Protective Order allowing Defendant to provide to Plaintiffs' counsel confidential information regarding Medicaid beneficiaries (**Exhibit L**).

B. The parties will use their best efforts to obtain a prompt scheduling of a Court hearing on this motion and approval of same.

## V. **Jurisdiction and Dismissal**

A. The Court will retain jurisdiction for a period of eighteen months from the date that Defendant has fully implemented this agreement, except that the requirements in Sections III.F, and III.H hereinabove may be implemented at least 90 days prior to final dismissal and certain requirements specified in Section III.D may be implemented at least 180 days prior to final dismissal. The time period that the Court will retain jurisdiction may be extended as specified below.

B. Defendant must provide notice to class counsel when each requirement in Section III above has been fully implemented. Upon receipt of such notice, class counsel will have 30 days to request from Defendant information reasonably needed to verify full implementation. If additional information is timely requested, Class counsel will have an additional 30 days after receiving Defendant's response to file an objection with the Court to Defendant's notice of full implementation. The parties may agree or the Court may require that the date of full implementation of that requirement be postponed until additional steps are taken.

C. From 60 days after Court approval of this agreement until the end of the eighteen-month period (or longer if extended) following full implementation of all requirements except those contained in Sections III.D, III.F, and III.H, the Court will retain jurisdiction to enter such orders as may be necessary to enforce this Agreement. During that period of continuing Court jurisdiction, class counsel may at any time give notice to Defendant of evidence suggesting substantial noncompliance with this Agreement. Defendant will investigate any such alleged noncompliance and take steps to correct the noncompliance as needed. In the event that noncompliance continues, Plaintiffs may apply to the Court for further relief. In the event of a Court finding of continuing substantial noncompliance, as defined in Section II.L hereinabove, the Court's jurisdiction will continue, notwithstanding that the eighteen-month period has ended, until the parties jointly notify the Court

        or the Court finds that Defendant is in substantial compliance with this Agreement and that at least eighteen months (or longer if extended) from the date of full implementation of all requirements (except Sections III.D, III.F, and III.H) have passed.

    D.    Upon the expiration of eighteen months (or longer if extended) after full implementation (except Sections III.D, III.F, and III.H) and the resolution of any pending allegation of substantial noncompliance, the parties will jointly notify the Court or the Court shall determine that the matter is ready for final dismissal. At that time, the Court shall enter the order of final dismissal attached hereto as **Exhibit M**.

    E.    After final dismissal, this agreement will remain enforceable as a contract by any aggrieved N.C. Medicaid beneficiary in Wake County Superior Court for a period of two additional years.

**VI.    Attorneys Fees:** Notwithstanding Fed. R. Civ. P. 54(d), class counsel may file, within 30 days after the order of final approval of the Settlement Agreement has become no longer appealable, a motion for attorneys' fees and expenses under 42 U.S.C. § 1988 for work performed on this case. The time period for filing this motion may be extended by Order of the Court. In that matter, Plaintiffs will be deemed the prevailing party but Defendant reserves right to contest the amount of fees awarded. Defendant will bear the cost of his own fees and expenses incurred in connection with this litigation. This provision is not intended to preclude class counsel from filing a second fee petition following the order of final dismissal for additional work performed after the date of the first fee petition or from precluding Defendant from opposing such a motion.

**VII.    Merger:** The parties agree and acknowledge that this written Agreement sets forth all of the terms and conditions between them concerning the subject matter of this Agreement, superseding all prior oral and written statements and representations, and that there are no terms or conditions between the Parties excepts as specifically set forth in this Agreement.

**VIII.    Amendment:** Any amendment or modification to this Agreement shall be in writing and signed by all Parties.

**IX.    No Strict Interpretation Against Draftsman:** The Parties have participated in the drafting of this Agreement and have had the opportunity to consult with counsel concerning its terms. This Agreement shall not be interpreted strictly against any one party on the ground that it drafted the Agreement or any part of it.

**X.    Voluntary Acceptance of Terms:** The Parties represent and acknowledge that this Agreement is the result of extensive, thorough, and good faith negotiations. The Parties further represent and acknowledge that the terms of this Agreement have been voluntarily accepted, after consultation with counsel, for the purpose of making a full and final compromise and settlement of any and all claims, allegations, or defenses set forth by the Parties in the litigation.

**XI.     Recitals and Headings:**  All parts and provisions of this Agreement, including the recitals, paragraph headings, and exhibits, are intended to be material parts of the Agreement.

**XII.    Authority to Settle:**  Each Party to this Agreement represents and warrants that the person who has signed this Agreement on behalf of the Party is duly authorized to enter into this Agreement and to bind that Party to the terms and conditions of this Agreement, subject to approval of the Court and the other contingencies specified herein.  The signatures below of officials or attorneys representing the Parties signify that all Parties have given their approval to this Agreement, subject to approval by the United States District Court for the Eastern District of North Carolina, Western Division ("the Court").

**XIII.   Facsimile or Email Signatures Binding:**  In order to expedite the signing of this Agreement, the Parties stipulate and agree that the delivery of an executed signature page by one party to the other via facsimile transmission or email of a PDF copy shall bind the transmitting party to the same extent as service of the original signature page by hand delivery.  The Parties stipulate and agree that a party that sends a signature page via facsimile or email transmission shall mail the original to the other party within five (5) business days after the facsimile or email transmission.

**XIV.    Counterparts:**  This Agreement may be executed in counterparts, each of which shall be deemed an original, and the counterparts shall together constitute one and the same Agreement, notwithstanding that each party is not a signatory to the original or the same counterpart.  All references to signature or execution of the Agreement shall be calculated from the date on which the last party executed the Agreement.

**XV.     Binding Effect:**  This Agreement is binding upon and shall inure to the benefit of the Parties hereto, including all members of the Plaintiff class, and their successors, and assigns.

**XVI.    Law:**  This Agreement shall be interpreted in accordance with federal law and the laws of the State of North Carolina. The venue for all legal actions concerning this Agreement shall be in the courts specified herein.

**XVII.   Term; Material Change in Law or Fact:**  No provision of this Agreement is enforceable subsequent to two years following the dismissal of this action.  During the effective period of this Agreement, all terms of this Agreement shall remain in effect, unless and until there is a material change in the law or facts that are the basis of this Agreement, in which case the parties may agree on an amendment of this agreement.

**XVIII.** Failure by any Party to enforce this entire Agreement or any provision thereof with respect to any deadline or any other provision herein shall not be construed as a waiver.

**IN WITNESS WHEREOF,** the parties have executed three (3) original copies of this Agreement.

   **[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

11

Case 5:17-cv-00581-FL     Document 124-1     Filed 10/18/22     Page 11 of 14

FOR THE PLAINTIFFS:

_____  10-10-22
ALICIA FRANKLIN            DATE

FOR THE PLAINTIFFS:

_Reyna Guzman_     10/10/22
REINA GUZMAN, individually and for her     DATE
minor child

13

FOR THE DEFENDANT:

_____       10/14/2022
Dave Richard                          DATE
Deputy Secretary, NC Medicaid
North Carolina Department of Health and Human Services