IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:17-CV-581-FL

| | |
|---|---|
| ALICIA FRANKLIN and REINA GUZMAN on behalf of herself and minor child E.L., on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> KODY H. KINSLEY, in his official capacity of Secretary of the NC Department of Health and Human Services, <br><br> Defendant. | ORDER |

This matter is before the court on plaintiffs' motion to compel (DE 140) and motion to enforce judgment (DE 141), which the court construes herein as a motion to reopen the case and enforce the settlement agreement. The issues raised are ripe for ruling. For the following reasons, the motion to compel is denied without prejudice, and the motion to enforce judgment, as construed herein, is granted in part and denied in part.

## STATEMENT OF THE CASE

This putative class action on behalf of North Carolina Medicaid beneficiaries commenced by complaint filed November 21, 2017, followed by an amended complaint December 6, 2017, which asserted clams under 42 U.S.C. § 1983 for violation by defendant of the Medicaid Act, 42 U.S.C. § 1396a and the due process clause of the Fourteenth Amendment.[1] Plaintiffs sought

---

[1] Plaintiffs also originally asserted claims under the Affordable Care Act, 42 U.S.C. § 18116 and the Americans With Disabilities Act (ADA), 42 U.S.C. § 12132, but the court dismissed those claims on defendant's motion for

certification as a class action; declaratory, preliminary, and permanent injunctive relief; and an award of costs and fees. The court certified two classes of plaintiffs August 9, 2018, and entered a preliminary injunction concerning their claims, which the court modified December 10, 2018, on the parties' motions.[2]

At hearing August 29, 2022, "the parties outlined their efforts to work collaboratively, over the course of more than three years of negotiations, to reach a comprehensive settlement to resolve all issues outstanding," and the court thereafter stayed case activities to allow the parties to file a joint motion for preliminary approval of settlement agreement, and the court set the matter for fairness hearing to take place January 13, 2023. (Order (DE 119) at 1-2). The court preliminarily approved October 31, 2022, a settlement agreement executed by the parties October 14, 2022 (hereinafter, the "settlement agreement") (See DE 124-1; Order (DE 128) at 1-2).

Following the fairness hearing, the court entered an order January 13, 2023, approving the settlement agreement pursuant to Federal Rule of Civil Procedure 23(c). (See Order(DE 132) at 1-4). In the conclusion of the order, the court stated it will "retain jurisdiction for the period described in the [s]ettlement [a]greement for the purpose of enforcing the terms of the [s]ettlement [a]greement." (Id. at 4). The court also ordered that "[s]ubject to the foregoing, the clerk is DIRECTED to close this case." (Id.).[3]

---

failure to state a claim upon which relief can be granted in an order entered August 9, 2018. (See Order (DE 55) at 16, 20).

[2] The court allowed voluntary dismissal of original plaintiffs Marcia Elena Quinteros Hawkins and Kyanna Shipp and intervention by Reina Guzman as a named plaintiff on March 6, 2020; dismissal of original plaintiff Vanessa Lachowski upon suggestion of death March 24, 2022; and substitution of defendant Kody H. Kinsley in place of Mandy Cohen August 24, 2022.

[3] The court subsequently allowed, May 31, 2023, the parties' joint motion for attorney fees, in accordance with the settlement agreement, calling for payment by defendant of $725,000.00 to plaintiffs' attorneys. (Order (DE 135) at 1).

By way of summary, the settlement agreement applies "solely to the matters at issue in this lawsuit, i.e., N.C. Medicaid eligibility redeterminations and adverse actions to terminate or reduce Medicaid coverage." (DE 124-1 at 2). It contains 18 enumerated action "requirements" (in sections A-R of the settlement agreement)[4] for defendant to undertake during specified time periods, summarized as follows:

    A.    "Defendant will take all reasonable steps to assure that Medicaid coverage is not terminated or reduced, unless and until [a county department of social services 'DSS'] has considered the beneficiary's eligibility for Medicaid benefits under all Medicaid eligibility categories, including disability-related categories."

    B.    "Before terminating or reducing Medicaid benefits received in a non-disability category, Defendant must" provide notice as specified in the settlement agreement.

    C.    "Defendant will take all necessary steps to assure . . . that Medicaid coverage is extended until [a] redetermination is completed and timely, adequate notice is sent."

    D.    "Defendant will take all necessary steps to assure" that notices of termination or reduction contain designated items.

    E.    "Defendant will take all reasonable steps to assure compliance with 42 C.F.R. §§ 435.907(e), 435.908 and 435.916 before Medicaid is terminated or reduced."

    F.    "Defendant will take all necessary steps to permit beneficiaries to complete" an online renewal process.

    G.    "Defendant will take all reasonable steps, including but not limited to full use of [an] audit and corrective action process" to assure "reasonable access by telephone" with DSS.

    H.    "Defendant will update the NCFAST-20020 Medical Assistance Renewal Notice."

    I.    "Defendant will take all reasonable steps, including but not limited to full use of [an] audit and corrective action process" to assure compliance with designated "Medicaid manual sections."

    J.    Same, to inform beneficiaries regarding access to a designated web-based notice program.

---

[4] Throughout this order, unless otherwise specified, when the court uses the term "requirement" followed by a capital letter A-R, such as "requirement A" or "requirement Q," the court is referring to the letter-enumerated requirements at pages 4-8 of the settlement agreement. (DE 124-1 at 4-8).

K. Same, to assure that county DSSs update records within seven days of a beneficiary's "report of a change in circumstances."

L. "Defendant will continue to take all reasonable steps to assure that Medicaid coverage does not effectively terminate without notice" due to certain data transfer processes.

M. "Defendant will take all reasonable steps to assure . . . mandatory training of all DSS staff" following the "end of the federal public health emergency" due to COVID-19.

N. "Defendant will take all reasonable steps, including but not limited to full use of [an] audit and corrective action process" to assure compliance with the settlement agreement by county DSSs.

O. "Defendant will take all reasonable steps" to ensure that county DSSs not in substantial compliance with the settlement agreement will cease "terminating or reducing Medicaid benefits."

P. Defendant will send a notice of rights to beneficiaries, as designated in the settlement agreement.

Q. "Defendant will provide all information reasonably requested by class counsel to allow class counsel to monitor compliance with this Agreement" including as specified in the settlement agreement.

R. Defendant will continue providing to class counsel monthly reports [pertaining to] the timeliness of Medicaid redeterminations in each of the 100 counties," as set forth in the settlement agreement.

(Settlement Agreement (DE 124-1) at 4-7).

The settlement agreement provides that "[t]he Court will retain jurisdiction for a period of eighteen months from the date that Defendant has fully implemented this agreement," and "[d]efendant must provide notice to class counsel when each requirement [A-R enumerated] above has been fully implemented." (Id. at 9). The settlement agreement provides a mechanism for exchange of information between plaintiffs and defendant to verify implementation, and steps in the event of alleged "substantial noncompliance," including the following:

> During that period of continuing Court jurisdiction, class counsel may at any time
> give notice to Defendant of evidence suggesting substantial noncompliance with
4

this Agreement. Defendant will investigate any such alleged noncompliance and take steps to correct the noncompliance as needed. In the event that noncompliance continues, Plaintiffs may apply to the Court for further relief. In the event of a Court finding of continuing substantial noncompliance, as defined in Section II.L hereinabove, the Court's jurisdiction will continue, notwithstanding that the eighteen-month period has ended, until the parties jointly notify the Court or the Court finds that Defendant is in substantial compliance with this Agreement[.]

(Id.). The settlement agreement defines "substantial noncompliance" as follows:

The determination of "Substantial compliance" or "Substantial noncompliance" . . . shall be made based on a careful weighing of the following factors, with no single factor, alone, sufficient to support a finding of substantial noncompliance: a) has the party made a strong and sustained effort to fully comply with the requirement; b) has the requirement's purpose or objective been complied with even though its formal language is not met; c) does the identified deficiency cause more than minimal harm or risk of harm to members of the plaintiff class, d) is the degree of noncompliance with the requirement great enough to constitute a marked deviation from the terms of the requirement; e) is the noncompliance a temporary failure during a period of otherwise sustained compliance with the provision; f) is there full compliance with a substantial majority of the agreement's requirements taken as a whole; g) is the noncompliance by a small number of county DSSs that Defendant has taken steps to promptly and substantially correct?

(Id. at 3-4).

Plaintiffs filed the instant motion to compel January 26, 2024,[5] asserting that defendant did not "provide all information reasonably requested by class counsel to monitor compliance" with the settlement agreement," pursuant to requirement Q of the settlement agreement. (Motion to Compel (DE 140) at 2). Plaintiffs seek an order compelling defendant to produce within 10 days enumerated missing documents.

Plaintiffs thereafter filed the instant motion to enforce judgment,[6] asserting that defendant is in "substantial noncompliance" with requirements A, B, D, E, G, I, J, M, N, and P (comprising

---

[5] The motion originally was filed January 9, 2024, and refiled in corrected form following notice of deficiency by the court.

[6] Although captioned as a "second motion to enforce settlement agreement," (DE 141 at 1), there was not previously filed in this case any "first" such motion.

ten of 18 requirements enumerated above), of the settlement agreement. (Motion to Enforce (DE 141) at 1). Plaintiffs seek a court order requiring defendant to: A) "take all necessary steps" to come into "substantial compliance" with the settlement agreement; B) "identify and then reinstate Medicaid for all class members whose benefits were reduced or terminated in noncompliance" with the settlement agreement; C) "provide regular reports to class counsel and the Court on the actions taken in response to the Court's order" as specified in the motion; and D) "[s]chedule for as soon as practicable a hearing on the motion." (Id. at 3-4).

In support of the motions, plaintiffs rely upon declarations of counsel attaching: 1) correspondence between the parties, 2) county DSS records regarding Medicaid terminations and reductions, 3) policies, procedures, notices, and forms of county DSSs and defendant, and 4) additional documentation developed by counsel for plaintiffs as "summar[ies] of evidence" (DE 144); as well as declarations by paralegals for counsel for plaintiffs and two Medicaid beneficiaries.

The court allowed defendant several extensions of time to respond to the instant motions, and then, on March 26, 2024, the court allowed the parties' joint motion to stay ruling on plaintiffs' motion to compel until resolution of the motion to enforce judgment. (See DE 153). In opposition to the motion to enforce judgment, defendant relies upon an affidavit of Eva D. Fulcher, "Deputy Director of member Operations, Eligibility and Enrollment" for defendant, (DE 162-1), attaching defendant's policies, procedures, correspondence, and training documentation. Plaintiffs replied in support of the motion to enforce.

# COURT'S DISCUSSION

A.      Principles of Settlement Agreement Enforcement

"[R]esolution of a motion to enforce a settlement agreement draws on standard contract principles," and "it may be accomplished within the context of the underlying litigation without the need for a new complaint." Hensley v. Alcon Lab'ys, Inc., 277 F.3d 535, 540 (4th Cir. 2002). "[D]istrict courts have inherent authority, deriving from their equity power, to enforce settlement agreements," and the "exercise of this authority has the practical effect of entering a judgment by consent." Id.

In some instances, it is appropriate for a district court "summarily to enforce a settlement agreement and to enter judgment based on that agreement without plenary hearing." Millner v. Norfolk & W. R. Co., 643 F.2d 1005, 1009 (4th Cir. 1981). "This summary procedure has been found to be admirably suited to situations where, for example, a binding settlement bargain is conceded as shown, and the excuse for nonperformance is comparatively unsubstantial." Id.

When, however, "there is a factual dispute . . . over the agreement's terms, the district court may not enforce a settlement agreement summarily." Hensley, 277 F.3d at 541 (emphasis in original). Rather, "the court must conduct a plenary evidentiary hearing in order to resolve that dispute, and make findings on the issues in dispute." Id.; see Wudi Indus. (Shanghai) Co. v. Wong, 70 F.4th 183, 192 (4th Cir. 2023) (same). For example if there is a dispute over whether there was "a meeting of the minds between the parties as to the meaning of" requirements in a settlement agreement, "the district court should, after a plenary hearing, determine . . . its terms and conditions." Ozyagcilar v. Davis, 701 F.2d 306, 308 (4th Cir. 1983).

A settlement agreement "must be construed as it is written, and not as it might have been written had the plaintiff[s] established [their] factual claims and legal theories in litigation."

7

United States v. Armour & Co., 402 U.S. 673, 682 (1971).  As such it must be construed, generally, "without reference to the legislation the [plaintiffs] originally sought to enforce but never proved applicable through litigation."  United States v. ITT Cont'l Baking Co., 420 U.S. 223, 236–37 (1975).  In enforcing a settlement agreement, therefore, the court must not "allow a party to pursue claims beyond the terms of the final settlement."  Bradley v. Am. Household Inc., 378 F.3d 373, 381 (4th Cir. 2004).  "It is for the district court either to implement a complete settlement agreed upon by the parties or to restore them to the status quo prior to partial execution of an aborted contract."  Wood v. Virginia Hauling Co., 528 F.2d 423, 426 (4th Cir. 1975).

With respect to remedy, where the requirements of the settlement agreement are injunctive in nature, "the Federal Rules of Civil Procedure specify procedural rules that apply when a district court awards injunctive relief."  Wudi Indus. (Shanghai) Co., 70 F.4th at 189.  "Rule 65(d)'s requirements apply generally to equitable decrees compelling obedience under the threat of contempt," such as when a district court order "requires [a party] to abide by an agreement."  Id. at 189, 191.  "In addition to complying with the applicable Rules of Civil Procedure, and because injunctive relief is a 'drastic and extraordinary remedy' to be utilized sparingly, the district court is duty bound to ensure that the party seeking injunctive relief has made the requisite showings."  Id. (quoting SAS Inst., Inc. v. World Programming Ltd., 952 F.3d 513, 528 (4th Cir. 2020)).

Finally, in employing the Federal Rules of Civil Procedure the court must endeavor to "secure the just, speedy, and inexpensive determination" of any such enforcement proceeding. Fed. R. Civ. P. 1.  The court may hold "one or more pretrial conferences" for purposes of case scheduling and management.  Fed. R. Civ. P. 16(a).  And the court may direct and impose limitations on discovery "proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).

B.  Analysis

Based on application of the foregoing principles of settlement enforcement, several intermediary procedural steps are required before the court properly can address the relief sought by plaintiffs in the instant motions.

1.  Case Reopening

As an initial matter, the court construes the motion to enforce as including a motion to reopen the case, because the court closed the case upon its entry of the settlement approval order. (See Order (DE 132) at 4). Plaintiffs have shown good cause for reopening the case to determine whether and to what extent enforcement of the settlement agreement is warranted. Therefore, plaintiffs' motion in this part, as so construed, is granted.

2.  Need for Plenary Hearing

The next step is to determine whether the settlement agreement may be "summarily" enforced, or whether a "plenary evidentiary hearing" is necessary. Hensley, 277 F.3d at 541. Summary enforcement is not appropriate here because defendant's response to the motion calls into question whether there was "a meeting of the minds between the parties as to the meaning of" all the disputed requirements in the settlement agreement. Ozyagcilar, 701 F.2d at 308.

As one example out of many, plaintiffs contend defendant is not in substantial compliance with several aspects of requirement E, which, in turn requires defendant to "take all reasonable steps to assure compliance with 42 C.F.R. §§ 435.907(e), 435.908 and 435.916 before Medicaid is terminated or reduced." (Settlement Agreement (DE 124-1) at 6) (emphasis added). Defendant contends, by contrast, the North Carolina Department of Health and Human Services ("DHHS") is "in compliance with this provision" by undertaking eight categories of actions. (Def's Resp. (DE 162) at 8-9).

Defendant's response begs the question what constitutes a "reasonable step[]" to comply with each of the regulations specified in requirement E, which regulations in turn have multiple parts and cross references. See, e.g., 42 C.F.R. § 435.908(a) ("The agency must provide assistance to any individual seeking help with the application or renewal process in person, over the telephone, and online, and in a manner that is accessible to individuals with disabilities and those who are limited English proficient, consistent with § 435.905(b) of this subpart.") (emphasis added). This question is further compounded by what constitutes "substantial compliance" with that requirement E, where "substantial compliance" requires "a strong and sustained effort to fully comply with the requirement." (Settlement Agreement (DE 124-1) at 3). For example, defendant asserts that "[m]ost counties have a bilingual interpreter on staff," but "[i]f staff is not available to act as an interpreter, then counties are required to access language interpretation services through a contracted vendor[.]" (Def's Response (DE 162) at 9). In sum, the instant briefing reflects the parties did not reach a meeting of the minds regarding what concrete steps need to be taken to be in substantial compliance with the settlement agreement. Summary enforcement of the settlement agreement thus is not appropriate.

Given that the court must determine meaning of disputed terms and conditions of the settlement agreement, the court turns to considering the procedures and filings that will aid the court in making this determination in a "speedy, just, and inexpensive" manner. Fed. R. Civ. P. 1. The instant briefs, in the court's view, tend to conflate the question of what the parties intended with each requirement with the question of what actions defendant has taken with respect to each requirement. A mechanism for parsing out these distinct issues will assist the court in determining substantial compliance and in fashioning an appropriate injunctive remedy, if any is warranted, after hearing. See Wudi Indus. (Shanghai) Co., 70 F.4th at 189, 191.

3. Discovery and Motions

An initial phase of limited discovery will enable the parties to narrow issues in dispute regarding the meaning of the disputed requirements in the settlement agreement. For example, with respect to requirement E, interrogatories or requests for admissions could identify points of agreement and disagreement between the parties regarding what are "reasonable steps" that could be taken – in theory or in the abstract – to assure compliance with the regulations specified in requirement E. (Settlement Agreement (DE 124-1) at 6).

A second phase of discovery will ensure plaintiffs have information reasonably required to determine what actions and steps defendant has, in fact, taken (including as necessary through actions of individual county DSSs). A motion to compel discovery at this juncture is premature. Accordingly, the court vacates its order staying ruling on the motion to compel, and denies the same without prejudice to renewal. A renewed motion to compel may be warranted, but only after the parties have conferred to establish a plan for discovery, as set forth in more detail below, and only if the parties determine, after further reasonable efforts to confer, that defendant has not or will not comply with plaintiffs' requests for information.

A subsequent phase of proceedings will ensure the parties have time to explore potential resolution of disputed issues, such as through a renewed or modified agreement on steps going forward, prior to engaging in any additional briefing or plenary hearing before the court.

Finally, after completion of the preceding three phases, plaintiffs will have opportunity to file a renewed motion to enforce settlement agreement or other motion for appropriate relief as may be warranted to bring the case to final judgment with injunctive relief. Thereupon the court will enter such further order as is warranted on the motion and/or schedule a plenary hearing.

To aid the parties' consideration of such issues with respect to available remedies and relief, the court notes it disagrees with plaintiffs' position that "the cost and administrative burden of correcting noncompliance with legal requirements in the Medicaid program is not a defense for" defendant. (Reply (DE 163) at 9). None of the cases plaintiffs cite for this proposition involve enforcement of a settlement agreement. Notably, the issue presented here is not whether defendant is in noncompliance with legal requirements in the Medicaid program, but rather whether defendant is in substantial noncompliance with the settlement agreement. Thus, the relief available does not lie "beyond the terms of the final settlement." Bradley, 378 F.3d at 381. Moreover, in awarding injunctive relief, in the context of enforcing a settlement agreement, the court must take into account factors such as "the balance of hardships between the plaintiff[s] and defendant" and "that the public interest would not be disserved by" the relief. Wudi Indus. (Shanghai) Co., 70 F.4th at 190.

In sum, plaintiffs' motion to enforce serves to commence the process of enforcing the settlement agreement in this case, but it does not provide the showing necessary for a final determination of the same. Accordingly, the court grants in part and denies in part without prejudice to renewal plaintiffs' motion to enforce.

    4.    Supplemental Joint Report and Plan

The parties are directed to file a supplemental joint report and plan, pursuant to Federal Rule of Civil Procedure 26(f), within 21 days of the date of this order, with specific proposals for discovery, filing of motions, and other matters addressed in this order. The following must be included in the report and plan:

    a.    Specific information concerning the parties' plan for proposed discovery, including:

1) The subjects on which discovery may be needed, in both phases of discovery set forth by the court herein, to include discovery regarding a) the parties' understanding of the terms and conditions of the settlement agreement and b) defendant's actions taken to meet the requirements in the settlement agreement.

2) The categories of discovery to be utilized by the parties, and proposed limitations. Where any proposed limitation is different from that imposed by the Federal Rules of Civil Procedure and/or the court's Local Rules, specific reason therefor shall be set forth;

3) The date on which the phases of discovery shall be concluded.

b. Proposed deadlines in addition to the deadline for discovery mentioned above, including for:

1) Disclosure of expert witness information where appropriate; and

2) Filing of all motions, including renewed motions to enforce and to compel.

c. The possibility of renewed settlement activities and proposed deadline for their completion.

d. Whether either party requests that a Rule 16(b) pretrial conference be scheduled in this case, prior to entry by the court of its supplemental case management order.

Thereupon, absent request for a Rule 16(b) conference, the court will enter a supplemental case management order, or other order as is warranted based upon the parties' joint report and plan.

## CONCLUSION

Based on the foregoing, plaintiffs' motion to enforce judgment (DE 141), construed herein as a motion to reopen the case and to enforce settlement agreement, is GRANTED IN PART and DENIED IN PART without prejudice to renewal, as set forth herein. The court VACATES its March 26, 2024, order staying consideration of plaintiffs' motion to compel (DE 140), and said motion is DENIED without prejudice. The parties are DIRECTED to confer and file, within 21 days of the date of this order, a supplemental joint report and plan, as detailed herein.

SO ORDERED, this the 10th day of June, 2024.

LOUISE W. FLANAGAN
United States District Judge